B. A. Stevens Company *v.* Whalen.

Opinion delivered June 27, 1910.

1. Sales of chattels—breach of warranty—remedies of vendee.—If there be a breach of warranty of the soundness or fitness of an article which the vendee has had no opportunity to inspect before delivery, he may elect to rescind the contract, or to affirm by keeping the property and, when sued for the price, to set up the false warranty by way of recoupment. (Page 492.)

2. Same—remedies of vendee—election.—A vendee of personal property, having a right to elect to rescind the contract for breach of a warranty as to its quality, must exercise his right of election within a reasonable time after he discovers the defect. (Page 492.)

3. Same—breach of warranty—recoupment of damages.—Where the vendee of personal property has waived his right to rescind the contract for breach of a warranty as to its quality, he will be entitled in a suit for the purchase money to recoup the cost of correcting the defect if it could be corrected at a reasonable expense, or the difference between the value of the defective article and one free of such defect. (Page 492.)

4. Counterclaim and setoff—separate contracts.—Under Kirby's Digest, § 6099, providing that a counterclaim must be a cause of action "arising out of the contract or transactions set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action," damages for breach of one contract can not be counterclaimed in an action on another contract. (Page 493.)

5. Same—unliquidated damages.—Unliquidated damages, even for the breach of a contract, can not be the subject of a setoff. (Page 493.)

Appeal from Lawrence Circuit Court, Eastern District; *Charles Coffin,* Judge; reversed.

*Smith & Blackford,* for appellant.

Instead of returning the defective table, appellee elected to retain it, and he is bound thereby. 22 Ark. 454; 81 Ark. 549; 77 Ark. 546; 53 Ark. 155; 77 Ark. 522; 48 Ark. 325; 38 Ark. 351; *Id.* 334. And the measure of damages would have been the difference between the defective table and the table contracted for. 78 Pa. St. 141; 21 Ark. 349; 25 Ark. 164; 64 Ark. 228; Mechem on Sales, § 817; 83 Ark. 232. One will not be permitted to avail himself of the advantages of inconsistent positions. 64 Ark. 213. One wishing to rescind a contract must do so within a reasonable time. 38 Ark. 351; *Id.* 334; 81 Ark. 549; 17 Ark. 228; 55 Ark. 148; 7 Ark. 579; 78 Ark. 501.

Parol evidence was not admissible to vary the terms of the mortgage. 25 Ark. 191; 35 Ark. 309.

*J. N. Beakley* and *W. E. Beloate,* for appellee.

McCULLOCH, C. J.   This is an action instituted by the plaintiff, B. A. Stevens Company, against defendant, Pat Whalen, to recover possession of two pool tables and the paraphernalia connected therewith, which plaintiff had formerly sold to the defendant and had taken chattel mortgages back to secure the purchase price. Defendant purchased one of the pool tables in controversy and the cues, balls, racks, etc., to be used in connection therewith, from plaintiff on October 12, 1907, and executed to the latter a chattel mortgage on same to secure the price, which was divided into eleven promissory notes of $10 each, five of which he paid and six remained unpaid at the time of the commencement of this action. Defendant purchased the other table in controversy from plaintiff on May 18, 1908, and executed a chattel mortgage to secure the price, evidenced by eleven promissory notes of $10 each, one of the notes only having been paid at the time of the commencement of this action. The action was commenced in April, 1909, after all the said notes became due. An order of delivery was issued at the commencement of the action, and the property was taken thereunder and delivered to plaintiff, defendant failing to give a retaining bond.

The evidence tends to show that the second table, purchased on May 18, 1908, was defective by reason of the fact that the slabs of slate out of which the top of the table was constructed did not fit together, and that when the table was put up there were joints between the ends of the pieces of slate; also that one of the carom blocks did not fit the pocket in the table. This table was shipped from plaintiff's factory or place of business at Toledo, Ohio, to the defendant at Hoxie, Arkansas, and complete instructions were sent showing how to set the table up. Soon after the table was received and put up by defendant, he wrote to plaintiff notifying it of the defect. He did not, however, reject the table or notify plaintiff that he intended to do so. Further instructions were sent to him by plaintiff about correcting the defect, and after defendant' made an effort to correct the defect he again notified plaintiff

of the continued existence of the defect, concluding his letter with the following statement: "Now, I will want you to make good your mistake. Let me hear from you." He still did not offer to return the table, nor did he notify plaintiff definitely that the same would be rejected. On the contrary, he continued to use the table in his pool room up to the time this action was commenced.

In September, 1908, in response to a demand for payment of the notes then due, he wrote a letter to the agent of plaintiff who had the notes for collection stating that it would be impossible for him to pay then on account of the fact that the cotton crop had not begun moving, and that he could not pay anything until about thirty days later. The notes were afterwards sent to an attorney in Lawrence County, and presented to the defendant, and he refused to pay, failing, however, to make an offer to return the table.

There was no defect about the first table, and it is undisputed that six of the notes were unpaid and past due at the time this suit was commenced. Defendant introduced testimony tending to prove the defective condition of the table, and also tending to prove the usable value of a pool table. After the introduction of all the evidence, the court refused to give any of the instructions requested by plaintiff, but on motion of defendant submitted to the jury the following interrogatories, which were answered by the jury as indicated below:

"1. Was the last table bought by Pat Whalen from the B. A. Stevens Company defective?

"A. Yes.

"2. Was the plaintiff notified of the defective table?

"A. Yes.

"3. What was the usable value of a good combination table like the one bought by defendant from the plaintiff in the business house of the defendant, Pat Whalen, at Hoxie, Arkansas?

"A. One dollar per day.

"4. What was the usable value of the table actually received by the defendant from the plaintiff?

"A. Fifty cents.

"5. What was the usable value of the good table taken from Whalen by the replevin action?

"A. One dollar per day.

"6. If the defective table taken by the plaintiff in replevin had been such a table as was intended to have been sold, what would have been the usable value of the same since the replevin was brought?

"A.   One dollar per day.

"7.   What was the value of any of the property replevied by the plaintiff that was not owned by the defendant at the time the mortgage was given?

"A.   $22.18.

"8.   How much insurance is included on the notes sued on in this action?

"A.   $7.00.

"9.   What was the value of the articles replevied? Give the articles and values.

"A.   Total $337.20; 1 No. 6864 4x8 Buckeye pool table, $143.00; 1 set carom blocks, $2.50; 1 set billiard markers, $1.25; 1 cue rack, $4.00; 1 set 2⅜ No. 910 billiard balls, $20.75; 1 ball rack, $4.00; 1 dozen cues, $4.00; 1 brush, 55 cents; 1 bridge, 35 cents; 1 basket, 40 cents; 1 shake bottle, 35 cents; 1 shake ball, 20 cents; 1 triangle, 30 cents; 1 rail fork bit, 20 cents, 1 No. 6535 4x8 Buckeye pool table, $125.00; 1 set pool balls, $16.00; 1 cue rack, $4.00; 1 ball rack, $4.00; 1 dozen cues, $4.00; 1 brush, 55 cents; 1 bridge, 35' cents; 1 basket, 40 cents; 1 shake bottle, 35 cents; 1 rail fork bit, 20 cents; 1 set shake balls, 20 cents; 1 triangle, 30 cents. Total, $335.20."

The court then made a finding that the defendant had tendered the defective table at various times, and had paid as a part of the price thereof $45 in cash, $12.77 in freight and $7 insurance, which should be credited upon the notes given for the other table, and that, when so credited, said sums were sufficient to cancel all the notes given for the first table purchased. The court thereupon held that, the purchase price of the first table being thus paid, plaintiff had no right to recover the first table, and that the taking thereof under the order of delivery was wrongful. Judgment was thereupon rendered against plaintiff and the surety on the replevin bond for the recovery of the first table and paraphernalia, viz., the one purchased in October, 1907, or its value, a total of $155.35, together with the sum of $215 as damages for detention of same during the pendency of the action. Plaintiff appealed.

It has been often decided by this court that if there be a breach of warranty of the soundness or fitness of an article which the vendee has had no opportunity to inspect before delivery, he may make his election, either to rescind the contract, or to affirm the contract by accepting and keeping the property, and, when sued for the price, set up the false warranty by way of recoupment. *Plant* v. *Condit,* 22 Ark. 454; *Weed* v. *Dyer,* 53 Ark. 155; *Bunch* v. *Weil,* 72 Ark. 343; *Ward Furn. Co.* v. *Isbell,* 81 Ark. 549.

In the last case cited above, which was a contract for the sale of lumber, the rule is stated as follows: "The contract specifications as to age and grades of lumber were not merely warranties, but conditions precedent, which gave appellant these rights: (1) if the lumber was not according to contract in these respects, to reject the same, or (2), to accept same and bring cross action for breach of warranty when sued for the purchase price, or (3), without bringing cross action for breach of warranty, to use the breach by way of reduction or recoupment in the action by the vendor for the price."

The vendee, having his election, can not employ all of these remedies, but must make a choice between them. Now, in the present case, defendant sought to take advantage of the remedy allowed him to rescind the contract, and the court allowed him the benefit of this. It was too late, however, to make his election after the action had been commenced against him to enforce the contract. It was his duty to make his election within a reasonable time after he received the property and discovered its defective condition. He had no right to keep the property and use it, and at the same time insist on a rescission of the contract. By keeping the property and using it, he elected to pursue the other remedy—that of demanding damages sustained by reason of the defect, which would be the cost of correcting the defect, if it could be corrected at a reasonable expense, or the difference between the value of the defective table and one which was free of defect, such as was contracted for. If the damages found by the jury, by reason of the defective condition of the table, exceeded the amount of the mortgage notes, then the plaintiff could not recover judgment for possession of the property. *Ramsey* v. *Capshaw,* 71 Ark. 408; *Ames Iron Works* v. *Rea,* 56 Ark. 450.

Under the statutes of this State, which provide that in replevin suits to recover mortgaged property the mortgagor shall be allowed to prove the amount of payments or set-offs against the debt, and that judgment shall be rendered for the balance due on the debt (Kirby's Digest, § 6869), whatever damages the jury shall find to be due the defendant by reason of the defective condition of the table should be allowed by way of counterclaim as a payment on the mortgage debt due for the defective table. The amount so found can not, however, be a counterclaim against the mortgage debt due for the price of the first table, for that is a separate contract, and the statute provides that a counterclaim "must be a cause of action in favor of the defendants, or some of them, against the plaintiffs, or some of them, arising out of the contract or transactions set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action." (Kirby's Digest, § 6099). *Barry-Wehmiller Mach. Co.* v. *Thompson,* 83 Ark. 283.

Nor can it be pleaded as a set-off, for unliquidated damages for a breach of contract can not be the subject of a set-off. *Gerson* v. *Slemons,* 30 Ark. 50; *Stewart* v. *Scott,* 54 Ark. 187.

Upon the pleadings and proof, plaintiff was entitled to a judgment for the possession of the pool table and paraphernalia sold to defendant in October, 1907. The question of damages on account of the defective condition of the other table should have been submitted to the jury.

The judgment is therefore reversed, and the cause remanded for new trial.