SOUTHERN TELEPHONE COMPANY v. BANKS.

Opinion delivered May 12, 1913.

1. APPEAL AND ERROR—DIRECTING VERDICT.—Where, in an action on an account, the defense of set-off is interposed, in testing the correctness of an instruction directing a verdict for the plaintiff, the testimony will be considered in its light most favorable to the defendant. (Page 286.)

2. CONTRIBUTION—EVIDENCE—SUFFICIENCY.—Where A and B were defendants in a former action, and the whole of the attorney's fee was paid by A, in an action by B against A on an account, *held,* evidence sufficient to require a submission of the cause to the jury of a set-off claimed by A by way of contribution. (Page 290.)

3. SET-OFF—WHAT MAY BE SET OFF—CONTRIBUTION.—Kirby's Digest, § 6101, provides that a set-off can only be pleaded in an action upon a contract, and the action must arise upon a contract or be ascertained by the decision of a court; *held,* when A is sued for money

paid by an accommodation indorser of its note, it can set off its right of contribution from the plaintiff, for fees paid by the defendant, A, to attorneys who represented both plaintiff and defendant, where both were defendants in former litigation. (Page 290.)

4. ACTIONS—TRANSFER OF CAUSES.—A court of equity is the proper forum for the adjustment of rights and equities between co-obligors, one of whom has discharged the obligation for the benefit of all, and where defendant, in an action at law, plead set-off for contribution, it is the duty of the law court of its own motion to transfer the cause to equity, and it is a reversible error to permit the cause to go to trial and render final judgment denying equitable relief to the defendant. (Page 291.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*Manning & Emerson,* for appellant.

1. In testing the correctness of an instructed verdict, the evidence in the case will be given its strongest probative force in favor of the party against whom the verdict was directed. 95 Ark. 560.

2. It is well settled that where two persons are liable for the payment of a sum of money, and one of them pays it, the other shall make contribution by paying his proportional part of the amount to the party who paid it. 49 Ark. 105; 73 Ark. 174-8.

Even if the facts failed to show a joint liability in the usual acceptation of the term, still, under the undisputed facts, appellee is liable to appellant as a matter of law. 51 Ark. 232-5; 31 Ark. 559; 40 Ark. 42; 55 Ark. 104; 47 N. E. 242; 9 Cyc. 805; 32 Md. 245-251; 89 Pac. 1123-4.

*Cockrill & Armistead,* for appellee.

Appellant's attempted set-off was not cognizable at law, because contributions can be enforced only in a court of equity. 39 Ark. 238; 15 Ark. 97; 23 Ark. 569. An action for contribution will lie only where two or more persons are jointly, or jointly and severally, bound to pay a sum of money, and one or more of them compelled to pay the whole, or more than his or their share. See 7 Am. & Eng. Enc. of L. (2 ed.) 326, and notes.

Each must be liable to the obligor for the entire debt before contribution will lie between the obligees. 30 Conn. 72.

There can be no contribution where the liability is for separate and distinct portions of the same debt. T. & R. 426; 4 Y. & Cull 424; McMull, Eq., (S. C.) 376; 22 N. C. 372; 55 Col. 106; 82 S. W. 415; 144 S. W. 847; 61 S. E. 797; 6 Pomeroy, Eq. Jur., § 916; 49 Ark. 105; 73 Ark. 174, 178; 60 Ark. 190; 119 Ia. 562; 38 N. H. 90; 22 Am. & Eng. Enc. of L. (2 ed.) 537, and cases in notes 1 and 2; 27 Cyc. 838, 841; 30 Cyc. 1298, 1306.

McCULLOCH, C. J. The plaintiff, A. B. Banks, instituted this action in the circuit court of Pulaski County against the defendant, Southern Telephone Company, a domestic corporation, to recover the sum of $1,006.54, alleged to be due on account for that amount paid out by the plaintiff for defendant as accommodation endorser on a promissory note.

The defendant filed its answer, admitting liability for the amount of plaintiff's demand, but pleading a set-off against the same in the following words:

"That plaintiff and defendant were jointly liable and indebted to McRae & Tompkins, attorneys, in the sum of $1,500.00 as between the said McRae & Tompkins upon the one part, and plaintiff and defendant upon the other, but really in proportions as between plaintiff and defendant that plaintiff owed $1,250.00 of said sum; that said McRae & Tompkins demanded of defendant the entire sum of $1,500.00, and threatened to sue it if said sum was not paid, and also threatened to institute proceedings for the purpose of placing the defendant in the hands of a receiver if said sum was not paid, and to avoid such litigation, defendant paid McRae & Tompkins the said sum of $1,500.00; that on account thereof, plaintiff is indebted to defendant in the sum of $1,250.00, with interest thereon," etc.

Plaintiff filed a reply, denying each of the allegations of defendant's plea of set-off, and the cause was tried by a jury.

Defendant adduced testimony in support of his plea of set-off; but the court gave a peremptory instruction to the jury to return a verdict in favor of plaintiff, and the defendant has appealed to this court.

In testing the correctness of the instruction, we must, of course, consider the testimony in its light most favorable to the defendant.

The strength of defendant's case, if any has been made out at all, depends principally upon the testimony of Mr. David A. Gates, who was vice president of defendant corporation and one of its stockholders.

The defendant, Southern Telephone Company, is a corporation organized under the laws of this State, having its domicile at the city of Little Rock. It seems to have been the successor of several other corporations owning and operating telephone lines in the State, and had, at the time of the occurrences under investigation in this lawsuit, become a prosperous concern with a large surplus almost equal to its capital stock. The fair market value of its capital stock was 60 per cent above par value. The stockholders were divided into two factions, one headed by Mr. Gates and the other by Mr. Banks, and the two factions were antagonistic to each other. Mr. Banks was president of the corporation, and a majority of the directors were of his faction. At a meeting of the directors in the year 1911, it was found by the Banks faction that the other faction owned a majority of the capital stock, and a resolution was adopted, authorizing the issuance of additional stock to the extent of $94,000 par value, and the sale of it to Mr. Banks at par, taking his notes, without interest, payable in six, twelve and eighteen months. The witness, Mr. Gates, computed this as making the sale of the stock to Banks, on a cash basis, at 92 per cent of its par value. The Gates faction protested against this and offered to take the stock at par value. The stock was, however, issued and delivered to Mr. Banks, and Gates instituted an action in the chancery court of Dallas County against the Southern Telephone Company and Banks to enjoin them from putting the stock into circulation and directing its cancellation,

it being charged in the complaint, in substance, that the stock was issued collusively and at less than its actual value. Mr. Gates employed his own attorneys in that case and paid their fees. Defendant company had its regular attorneys, who resided and practiced their profession in the city of Little Rock, but McRae & Tompkins, a firm of attorneys at Prescott, Arkansas, were employed to defend against the said action which Gates had instituted. A joint answer of the Southern Telephone Company and Banks was filed in the action, but the defense was abandoned, and the relief sought by the plaintiff, Gates, was conceded and the stock surrendered by Banks, and cancelled. The action was dismissed, and that litigation thus ended. During the summer of 1911, at another meeting of the stockholders, a board of directors of the Banks faction was again elected, and a resolution was adopted authorizing the issuance of $200,000 additional stock and sale of it to Banks. There is testimony tending to show that at that meeting, the Banks faction voted stock which they had no right to vote, and thereby controlled the action of the corporation at that meeting. A Mr. Howell, who resided in Louisiana, was induced by Mr. Gates and his associates to institute an action in the United States Circuit Court at Little Rock to enjoin the issuance of his stock and to place the affairs of the corporation in the hands of a receiver. The Southern Telephone Company and Banks were the defendants. At that time the stock was of the market value of $1.60, and its assets were of the value of $1,100,000. Shortly thereafter it sold out to the Southwestern Telegraph & Telephone Company for that sum. The regular attorneys for defendant, Southern Telephone Company, entered its appearance, and McRae & Tompkins were also employed and filed a written entry of the appearance of both defendants.

Within a few days thereafter the differences between the two factions were adjusted, and the suit was dismissed, and in a few months the aforementioned sale to the Southwestern Telegraph & Telephone Company

was consummated. In the meantime, the directors of the Banks faction had ceased to act, and the Gates faction, who controlled a majority of the stock, elected directors, Mr. Banks, however, continuing as president, and Gates was elected vice president. After the sale of the assets of the corporation, but before its affairs were adjusted, when it had large amounts of outstanding assets to collect, Mr. McRae, of the firm of McRae & Tompkins, approached Gates and demanded payment by the corporation of fees aggregating $1,500 for services alleged to have been performed in the aforementioned litigation, and for certain other services rendered in an advisory way in getting its records straightened out. Mr. Gates, who was then in control of the affairs of the corporation, declined to pay the account at first, claiming that the services were really performed for Banks individually, but after several conferences, he agreed to go to Fordyce to confer with Mr. Banks, and then take it up with McRae & Tompkins. He did this, but Banks finally refused to pay any of the fee, and Gates asked McRae & Tompkins to draw a draft on the company at Arkansas City, and promised to see that it was paid. The draft was drawn, and a bill for the $1,500 was attached to it, and the draft was promptly paid.

Mr. Gates, in testifying, did not pretend to know that a contract had been entered into with McRae & Tompkins, but stated the fact that McRae & Tompkins had appeared in the action for both the telephone company and for Banks, which is shown by other testimony, and he also testified that when he went to Fordyce to confer with Banks about the bill, the latter admitted that McRae & Tompkins had appeared for him individually in the litigation, and that he owed them for the service, but later in the conversation, after having talked with McRae over the telephone, refused to pay anything on the bill.

Gates testified that defendant company was only a nominal party to the Dallas County litigation and that a fair proportion of the fee to McRae &

Tompkins would be one-sixth of the amount charged, the other amount being chargeable against Banks, who was the real party interested in that litigation. His testimony tended to show that while the defendant company had more than a nominal interest in the Federal Court litigation, Banks and his associates were the cause of the differences which gave rise to that litigation, and that the greater portion of the fee was chargeable against him. In other words, the testimony of Gates tended to show that McRae & Tompkins had appeared in the litigation for both of the defendants, Southern Telephone Company and Banks, and that there was a joint liability to McRae & Tompkins for the fee which the telephone company had paid. The bill attached by McRae & Tompkins to the draft was made out against the telephone company alone, and Gates' testimony is sought to be weakened in his statement that Banks was jointly liable; but this circumstance is explained by Gates, who stated that the bill was forwarded to Arkansas City attached to the draft, and that he did not see it until after it was paid. In fact, he testified that he yielded to the demands of McRae & Tompkins and paid the bill because he was afraid they would institute proceedings for another receivership, and thus tie up the assets of the company, which he sought to avoid.

If there was a joint liability on the part of the defendant, Southern Telephone Company, and plaintiff, Banks, to McRae & Tompkins, as the testimony of Mr. Gates tended to prove, then Banks is legally liable to the telephone company for contribution of his share. If the transactions, which, as between Banks and the telephone company, gave rise to the litigation, were fairly conducted and free from fraud, then the amount of the joint liability should, as between the two parties, have been equitably shared according to their interests in the litigation. If, as charged by Gates and his associates, the attempted issuance of additional stock and the sale thereof at a price less than the market value, was collusive and fraudulent, thus giving the other stockholders

just grounds of complaint, then the corporation would be entitled to recover all of the fee from Banks, who, under those circumstances, would be deemed the wrongdoer, and should be held responsible for the expense of the litigation. In either event, however, there existed a joint liability on the part of both of the defendants in that litigation to McRae & Tompkins, if, as the testimony of Gates tended to show, they were jointly employed to appear for both of the defendants, and Banks would be liable to the telephone company for a part, or all, of the fee, according to the circumstances. There may have been a joint liability on the part of both of the defendants to McRae & Tompkins for the full amount of the fee, though, as between themselves, the expense should, according to the facts, have been borne in unequal shares. If, on the other hand, the two parties employed attorneys separately to represent their respective interests in the litigation, there existed no joint liability and no right to contribution.

We are of the opinion, therefore, that the testimony was sufficient to establish a joint liability and the right of defendant telephone company to demand contribution, and the court erred in giving the peremptory instruction.

The liability for contribution grew out of a contract, and could, therefore, be made the subject-matter of a set-off. Kirby's Digest, § 6101.

Unliquidated damages for breach of contract can not be the subject of a set-off. *B. A. Stevens Co.* v. *Whalen,* 95 Ark. 488.

Appellant's claim is not, however, one for damages, but it is to recover the amount alleged to be due under an implied contract to contribute a proportionate part of the sum paid in discharge of a joint liability. The fact that the amount is in dispute does not prevent it from being offered in set-off.

It is insisted, however, that contribution can only be asserted in a court of equity, and can not be awarded at law. Learned counsel for appellee cite cases in support of that contention.

It is true that a court of equity is the proper forum
for the adjustment of rights and equities between co-obli-
gors, one of whom has discharged an obligation for the
benefit of all, and that it is impracticable to adjust in
a suit at law all of its defenses, both legal and equitable,
and he is required to do so. *Moore* v. *McCloy,* 70 Ark.
505. The defendant should have asked the transfer of
the cause to the chancery court for a decision upon its
equitable defense; but it was, too, the duty of the court,
of its own motion, to transfer the cause when the equit-
able defense was presented, and it constituted error to
permit the cause to go to trial and then render final judg-
ment against the defendant denying the equitable relief
sought. *Newman* v. *Mountain Park Land Co.,* 85 Ark.
208; *Lawler* v. *Lawler,* 107 Ark. 70.

The judgment is therefore reversed and the cause
remanded with directions to transfer the cause to the
chancery court for further proceedings not inconsistent
with this opinion.