WESTERN CABINET & FIXTURE MANUFACTURING
COMPANY *v.* DAVIS.

Opinion delivered December 13, 1915.

1. TRIAL—OPEN AND CLOSE OF ARGUMENT—ACTION ON CONTRACT—BURDEN OF PROOF.—Appellant sued appellees for a balance due on the sale of certain fountain fixtures; appellee answered and set up a counter claim for damages on account of defects in the articles sold. The court charged the jury to find for the appellant the amount claimed, less any amount they found due appellee on his counter claim. *Held*, the burden being upon appellee to prove his counter claim, that he was entitled to the opening and closing argument.

2. APPEAL AND ERROR—HARMLESS ERROR—INCOMPETENT TESTIMONY.—In an action for the balance due on a contract for the sale of fixtures, the erroneous admission of incompetent testimony on the issue of the seller's false representation, will be held harmless where the consideration of that issue was withdrawn from the jury.

3. SALES—WARRANTIES—ORAL EVIDENCE.—Parol evidence is not admissible to engraft a warranty upon a written contract of sale.

4. SALES—DEFINITELY KNOWN ARTICLE OF COMMERCE—QUESTION FOR JURY.—Appellant sold to appellee a certain soda fountain which embraced certain unusual features of construction; in making the sale, appellant submitted to appellee written specifications of the fountain to be furnished. *Held*, the issue as to whether the fountain was a well known article of sale on the market, so as to bar

defendant's counter claim for defects and damages due to its construction, was for the jury.

5. SALES—ARTICLE FOR A CERTAIN PURPOSE—IMPLIED WARRANTY.—Appellant sold to appellee a certain sort of soda fountain which appellant described in its written specifications as "Western '30' iceless fountain." *Held,* the jury were warranted in finding that the term did not designate a known, defined, definite article of commerce, and that there was an implied warranty that the fountain would serve the purpose that a soda fountain was intended to serve.

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

*A. C. Cunkle, George W. Dodd, New, Miller, Carmack & Winger,* for appellant.

*Frederic O. Berge,* of counsel.

1. The written instrument constituted the entire and complete contract between the parties and no proof of prior statements or representations of appellant was admissible. No parol warranty could be engrafted upon the written contract. 83 Ark. 105; 97 S. W. 681; 80 Ark. 505-8; 104 Ark. 488; 83 *Id.* 240-2; 73 *Id.* 542; 60 *Id.* 387.

2. The burden was on the plaintiff and he was entitled to open and close the argument.

3. It was error to submit to the jury, as a question of fact, whether there was an implied warranty or not of suitableness, etc. That was a question of law for the court. The contract was for an article known, described and definite in commerce. It was sold and installed. There was no express warranty in the contract and none could be implied, or supplied by evidence. 45 Am. Dec. 230; Suth. on Dam. (3 ed.) 1950-2; 67 N. J. L. 153; 3 M. & W. 390; 42 N. H. 165; 34 N. Y. 118; 4 Johns. 421; 68 L. R. A. 441; 6 *Id.* 392; Leake on Cont. 404; 110 U. S. 212; 178 Fed. 806; 79 *Id.* 43; 141 U. S. 510; 137 Fed. 332; 80 Ill. 477; 98 Ark. 482; 94 *Id.* 282; 64 N. Y. 411.

4. The court erred in its charge as to the measure of damages.

*Jno. P. Woods* and *Read & McDonough,* for appellee.

1. Appellee's cross-complaint was sufficient. It set up all that was necessary as a counter-claim based on

false representations. 60 Ark. 281; 38 *Id*. 334; 60 *Id*. 387; 73 *Id*. 542; 104 *Id*. 388; 80 *Id*. 505; 47 *Id*. 164.

2  As to the measure of damages, the court, as far as it went, properly charged the jury. The true measure is the difference between the value of the defective article and one which is free of defect. 95 Ark. 492; 47 *Id*. 166; 33 Kans. 491; 37 Mich. 179; 31 Minn. 165.

3.  The burden was on defendant and he was entitled to open and close. Kirby's Dig. § 3107, 6196; 82 Ark. 331; 85 *Id*. 123; 74 *Id*. 607; 61 *Id*. 627; 59 *Id*. 140; 58 *Id*. 556.

4.  There was an implied warranty that the fountain was a fit and merchantable article and reasonably fit for for the purpose for which it was intended, made and designed. 48 Ark. 325-330; 53 *Id*. 155; 73 *Id*. 470; 72 *Id*. 343; 77 *Id*. 546; 81 *Id*. 549; 83 *Id*. 15; 90 *Id*. 78; 100 *Id*. 17; 28 L. Ed. U. S. 186; 2 Man. & G. 279; 3 *Id*. 868; L. R. 3 Q. B. 197; 21 N. Y. 552; 11 Oh. St. 53; 27 Wisc. 152; 8 Blackf. 318; 106 Ala. 377; 109 Tenn. 67; 62 Am. St. 88; 77 Me. 457; 77 S. W. 1011; 45 S. E. 418; 72 N. W. 369; 73 *Id*. 554; 74 S. W. 12; 91 Am. Dec. 346; 102 Mich. 221; 149 N. Y. 144; 141 U. S. 510; 15 Am. L. Reg. 417; 77 Ark. 343, etc.

SMITH, J.  This suit was brought to enforce the payment of the balance alleged to be due upon a contract for the sale and installation of certain drug store fixtures and a soda fountain. The contract price was $5,100 of which all had been paid except the sum of $2,311.26.

Attached to the complaint as an exhibit thereto were the "Specifications for Set of Drug Fixtures and Soda Fountain." These specifications described the various fixtures and the fountain. The specifications for the fountain gave the dimensions and, among other things provided:

"Working apparatus to be composed of two German silver units, each to have 10 syrup pumps, 4 crushed fruit jars, 4 counter service goose necks, one of which will be connected with city water, two ice cream cabinets, two

cold storage compartments, two drain boards, two disher vats, two spoon vats, 4 refrigerator drawers, one chipped ice receptacle, one rinsing tank, and one tumbler washer brush, *each of the above units to be our regular Western '30' iceless.*

These specifications, which were accepted by appellee, contained no express warranty other than that "all work to be done in a good and workmanlike manner."

Appellee admitted the acceptance by him of the specifications set out and the installation of the fixtures, and that there was due under the contract the sum sued for. He alleged the existence of an implied warranty as to the serviceability of the fountain, and the breach of this warranty, and he further alleged that the soda fountain was represented to be a workable, practicable, and valuable soda fountain, whereas in truth and in fact it was not such a fountain, and that he was induced to sign the contract of purchase upon the representation that said fountain was of the value named in the contract, and he relied upon said representations, whereas said representations were untrue, and were known by appellant to be untrue at the time they were made, and that the fountain was not of that value, but was worthless and without any value whatever. There was a counter claim for the damages alleged to have been sustained as a result of the false representations and deceit practiced upon appellee and an enumeration of damages thus sustained which exceeded the price of all the fixtures. Various pleadings and motions were filed which we need not here set out.

Over appellant's objections and exceptions evidence was offered in support of the allegation, that the fountain was not fit for the uses for which it was purchased. The evidence is in hopeless conflict, and we will not attempt to reconcile it, but will assume, as we are required to do in testing its sufficiency, that the jury accepted the evidence offered in appellee's behalf where it conflicted with that offered by appellant.

It was testified that an iceless fountain was "a brine system for keeping the soda fountain cool is an iceless fountain, and where you put ice on your coolers is an ice fountain."

One of the principal witnesses in the case was a Mr. Glenn, who was the originator of the principle sought to be put in operation in this fountain. Mr. Glenn negotiated the sale of this fountain to appellee, and testified generally that the fountain was what it purported to be, and was usable as such. On his cross-examination, however, he admitted that this system was an experiment, and that the fountain had not done what he thought it would do, and that in saying it was a usable fountain he meant that a person could go ahead and use it by putting ice in the drinks if they were not drawn cold enough. It was admitted that the company which manufactured this fountain had only been so engaged for seven or eight months, and that while a number had been sold they were not in general use. It was also shown that a patent had been applied for, but for some reason which is not made plain no patent was ever issued. It was also shown that the company had ceased to manufacture the fountain, but this was explained by the statement that the company's plant had burned and competitors sold on such long terms of credit that it was not thought advisable to rebuild the plant. It was admitted that in appearance the fountain was all any one could ask, but it was claimed in effect that this was its chief virtue. It was shown that the fountain possessed the necessary receptacles for the fruits, flavors, condiments, and other accessories, but it was also shown that it consumed an abnormal quantity of ice and failed to cool itself properly, as a result of which there was an expensive loss of fruits amounting at times to as much as $10.00 a day on that account alone. It was shown that certain coils were removed, and appellant complains of this action and explains that these coils were an essential part of the plan of the fountain. But it was shown that a long continued effort had been made to operate the fountain

with the coils retained, and a witness testified that every plumber in Fort Smith had worked with them and the fountain, but finally the coils were removed for the reason that "the material in the coils was such they could not be operated in the fountain without constant leaks. There was nothing like such leaks in the fountain today as there was a year ago, because most of the coils have been removed." Witnesses testified there was an odor about the fountain caused by leakage and the lack of refrigeration, and that its condition was unsanitary; that cold carbonated water could not be drawn from it and that its refrigeration was a failure.

It was conceded that the fountain was not in existence at the time appellee signed the contract sued on. It is admitted, however, that he did see a full-sized model of it before that time, and that he also saw similar fountains at the factory before his purchase, and appellee admitted that he saw certain fountains in operation in Kansas City, where the factory was located, but he says at that time he had already signed the contract. It is also admitted that after the fountain had been in use for a period of five months, appellee made a payment of $500 on account of the purchase money, but it was explained that this payment was made after assurance on appellant's part that defects complained of would be remedied, and appellant requested that a fair opportunity be afforded for the fountain to prove its value.

A certain witness who claimed to be an expert testified that he had examined the fountain and had discovered certain structural defects which required remedying before the fountain could be regarded as adapted to the use for which it was intended, and he testified that the cost of this change in the system would be $1,900.00. Appellee was permitted, over appellant's objection, to state that he had expended $200 in repairs of various kinds on the fountain in the attempt to make it usable.

Exceptions were saved by appellant to the action of the court in refusing to give various instructions asked by it, the effect of which was either to direct the jury to re-

turn a verdict in its favor, or to make declarations conforming to the statement of appellant's contention which will be hereafter set out. And exceptions were also saved by appellant to all of the instructions given by the court. In addition, appellant excepted to the action of the court in refusing to allow it the right to open and close the argument.

The court gave the following instructions:

"1.    Plaintiff sues the defendant on a balance on a contract introduced in evidence. The execution of the contract is admitted, and also that there is a balance of $2,311.26 not paid of the amount agreed to be paid under the contract. Defendant, by way of counter-claim, asks damages against plaintiff for alleged defects in the soda fountain (one of the articles sold under the contract), and also damages for expenses in testing the fountain as a suitable article for the purpose for which it was purchased. The burden of proof is on the defendant to sustain his counter-claim by a preponderance of the evidence"

"2.    If the jury find from the evidence that the soda fountain purchased by defendant from plaintiff was a definitely known article of sale on the market and defendant purchased same as such and same was delivered to him and installed in his store in accordance with the terms of the contract, then defendant would not be entitled to recover on his counter-claim, even though the jury may find that the soda fountain was not a serviceable article or did not meet the requirements for which defendant purchased it."

"3.    But if the jury find from the evidence that the soda fountain was not a definite and known article of sale on the market but a special manufacture by plaintiff for use as a soda fountain and represented by plaintiff as suitable and serviceable as such, and was sold to defendant for use and service as such, and represented by plaintiff as a suitable article for dispensing soda water, and if you further find from the evidence that the soda fountain is not a usable and serviceable article to defendant for dispensing soda water and for the purpose

for which it was purchased, when properly operated, defendant would be entitled to recover on his counter-claim.''

"4. If the jury find that the defendant is entitled to recover on his counter-claim, the measure of his damage will be the cost of replacing the defective parts of the soda fountain so as to make it serviceable for the purpose for which it was purchased, and also such expenses as defendant necessarily incurred in making a fair and reasonable test or trial for the working of said fountain.''

"5. The defendant, if entitled to recover on his counter-claim, cannot recover for loss of trade or damage to his business, the only damage, if any, being as set forth in the foregoing instruction.''

"6. The jury will find for plaintiff $2,311.26, the balance on the account; and if you find for defendant on his counter-claim, if for a less amount than plaintiff's claim, you will deduct same from amount allowed plaintiff and render your verdict for plaintiff for balance; if you find for defendant on his counter-claim for a greater amount than allowed plaintiff, you will deduct amount allowed plaintiff from amount found for defendant and render your verdict for defendant for balance.''

Appellant insists that the written instrument exhibited with its complaint constitutes the entire and complete contract between the parties, and that the trial court erroneously permitted appellee to make proof of prior statements and representations concerning the subject-matter of that contract, and that the only proper inquiry should have been whether the articles described in that written contract were furnished and installed as represented in the contract. And appellant states its second point as follows:

"We sold the defendant one of our regular Western '30' iceless fountains. It is so known, described and defined in the written contract. We delivered and installed a Western '30' iceless fountain. The defendant got just what he ordered, and when we supplied that

specific fountain we performed our contract. The identity of the fountain described in the contract and the description of it in that contract (and not the familiarity of the defendant with the character and work of the fountain) made it a known, described and definite thing, and brings this case within the rule that there is no implied warranty as claimed. This was a question for the court, and it was erroneous to submit this question to the jury and to refuse to direct a verdict in our favor.''

(1)   We think no error was committed in refusing to grant appellant the right to open and close the argument. In its instruction No. 6, the court told the jury to find for appellant in the sum sued for and to allow appellees only such damages as were shown to have been sustained by them, and these damages, of course, could not have been allowed until the jury had first found that appellee was entitled to recover them under the other instructions set out. Under the issue joined the burden was upon appellee to show both the fact that he was entitled to recover damages, and the amount of these damages, and no issue was made as to appellant's right to recover the amount sued for.

(2)   It appears from an examination of the instruction set out that the court did not finally submit to the jury the question of appellant's right to recover on his counter-claim for damages occasioned by reason of the alleged false representations and deceit practiced upon him in the procurement of the execution of the contract. But appellant cannot, of course, complain of this fact, and if error was committed in the introduction of this evidence, such error was cured by the withdrawal of this question from the consideration of the jury.

(3)   It is, of course, thoroughly well settled by numerous decisions of this court, and of other courts, that parol evidence is not admissible to engraft a warranty upon a contract of sale, and where the parties to such contract have evidenced their negotiations and trade by a written instrument, without embodying therein a warranty, it cannot be shown that a warranty was, in fact,

made. It is earnestly insisted that appellee was permitted to infringe this rule, as a result of which it is argued that the parties to this agreement contracted for the sale and delivery of a known, defined article of commerce and described this article with particularity and certainty in the writing which was prepared to evidence their agreement, and that appellee has been erroneously permitted to engraft a warranty upon this contract.

(4) We are of the opinion that the controlling question in this case is one of fact, and that is, whether or not the fountain in question was a known, defined article of commerce. Appellant insists that it was, and that the decision of this question was one of law for the court, and that the court should have so declared the fact to be and should thereupon have directed a verdict in its favor for the amount sued for. We do not agree, however, that this question is one of law, but we are of the opinion that it is rather one of fact, and as such was properly submitted to the jury. The jury was told, in the second instruction, that if they found the fact to be that the fountain was a definitely known article of sale on the market, and appellee purchased same as such, that he would not be entitled to recover on his counterclaim, even though the jury should find that the fountain was not a serviceable article and did not meet the requirements for which appellee had purchased it. We think this instruction submits the real question in the case, and that the question was properly submitted to the jury. The proof is that an attempt had been made to make this fountain the subject of a patent; that appellant had been engaged in its manufacture for only seven or eight months, and that the fountain was not in general use, and that this particular fountain had not even been manufactured at the time of the execution of the contract sued on, although appellant had seen a full-sized model of it, and had seen other fountains in the factory, but he had not seen any of these fountains in operation until after his purchase.

Opposing counsel have exhibited great industry and much learning in the preparation of the briefs in this case, and have cited us to a great many authorities dealing with the questions here involved. It would protract this opinion to an interminable length to attempt to review these decisions or to distinguish the cases on the facts involved in each of them.

Appellant chiefly relies upon the opinion by Judge Sanborn in the case of *Davis Calyx Drill Co.* v. *Mallory,* 137 Fed. 332. This is a well considered opinion, and cites a great many cases. The facts there were that a vendee contracted with a manufacturer, in writing, to buy and pay for one class F3 drill, made by the latter, and described in its catalogue, and certain other specific machinery and tools, for an agreed price. Before the contract was made, the vendee informed the vendor that he wanted the drill and machinery to bore holes through certain described strata in land in the county of Lucas, in the State of Iowa, and the manufacturer assured him that its class F3 drill would do this work as rapidly and economically as a diamond drill. But the written contract was silent upon this subject. The vendor relied upon this assurance of the manufacturer, and made the contract. It was there held: ''But no implied warranty that a machine, tool or article is suitable to accomplish a particular purpose or to do a specific work arises where the vendee orders of the manufacturer, or purchases of the dealer, a specific, described, or definite machine, tool, or article, although the vendor knows the purpose or work which the purchaser intends to accomplish with it, and assures him that it will effect it. Such an assurance is but the expression of an opinion, when it is. followed by a written contract, complete in itself, which is silent upon the subject. The extent of the implied warranty in such cases is that the machine, tool, or article shall correspond with the description or exemplar, and that it shall be suitable to perform the ordinary work which the described machine is made to do.''

The same learned judge in this opinion also said:

"An implied warranty that an article will be fit for a particular purpose may be inferred from a contract to make or supply it to accomplish that purpose, because the accomplishment of the purpose is the essence of the undertaking. But no such warranty arises out of a contract to make or supply a specific, described, or definite article, although the manufacturer or dealer knows that the vendee buys it to accomplish a specific purpose, because the essence of this contract is the furnishing of the specific article, and not the accomplishment of the purpose. In other words, a warranty that a machine, tool, or article sold is fit and suitable to accomplish a particular purpose or to do a specific work may be implied when the manufacturer or dealer knows the purpose or work to be effected, and the purchase of the machine, tool, or article is in reality an employment of the vendor to do the work by making or furnishing a machine, tool, or article to effect it."

There was a very vigorous dissenting opinion in this case by Judge Phillips, who reviewed a number of cases on this subject and, among others, the opinion by Mr. Justice Harlan in *Kellogg Bridge Co.* v. *Hamilton,* 110 U. S. 108, where there is a very learned discussion of the questions involved. Other cases were also cited and reviewed in this dissenting opinion, to which reference may be had for a further discussion of the questions here involved. This dissenting opinion concluded with this statement:

"It does seem to me therefore that if there can be a case where the law writes into the executory contract, where the manufacturer undertakes to manufacture a machine with full knowledge of the purpose for which it is bought, a warranty that it is fit for the specified use, and when the manufacturer knows that the vendee is relying upon the manufacturer's superior knowledge of the fitness of the machine, this is clearly a case for the application of this wholesome rule of law."

We are not called upon to approve the application of the principle hypothetically stated in this concluding sentence to the facts of that case, but we do concur in the view of the law as there hypothetically expressed. Our own cases are to this effect. A leading case, and one frequently cited in the subsequent opinions of this court, is that of *Curtis & Co.* v. *Williams,* 48 Ark. 325. It was there said:

"Proof of an express warranty by the defendant, of the quality of this machinery, was not essential to a recovery. Ordinarily, upon sale of a chattel, the law implies no warranty of quality. But there are exceptions to the rule, as well established as the rule itself. One of these exceptions is where a mnufacturer undertakes to supply goods manufactured by himself, to be used for a particular purpose, and the vendee has not had the opportunity to inspect the goods. In that case the vendee necessarily trusts to the judgment and skill of the manufacturer, and it is an implied term in the contract that he shall furnish a merchantable article, reasonably fit for the purpose for which it is intended." See also, the following cases: *Weed* v. *Dyer,* 53 Ark. 155; *Main* v. *Dearing,* 73 Ark. 470; *Bunch* v. *Weil,* 72 Ark. 343; *Truschel* v. *Dean,* 77 Ark. 546; *Ward Furn. Mfg. Co.* v. *Isbell,* 81 Ark. 549; *Main* v. *El Dorado Dry Goods Co.,* 83 Ark. 15; *American Standard Jewelry Co.* v. *Hill,* 90 Ark. 78; *Bowser* v. *Kilgore,* 100 Ark. 17.

This case is distinguishable on the facts from the case of *Davis Calyx Drill Co.* v. *Mallory, supra.* There the instrument sold was a drill, which was adapted to drilling in some soils but not in others; while the article, constituting the subject-matter of this contract, was a soda fountain, or nothing. It was either adapted to that use, or it was worthless, and the use which appellee proposed to make of the fountain was the only use to which any one could put it.

(5) We think the evidence legally sufficient to justify the submission of this question to the jury, and to warrant the jury in finding that the term "Western '30'

iceless fountain'' did not designate a known, defined, definite article of commerce, the employment of which evidenced a meeting of the minds of the parties upon the thing bought and sold, and excluded the implication of a warranty. In such cases, of course, it is immaterial whether the article sold meets the expectation of the party who buys or not, and it is unimportant that it may not be adapted to his uses. But here these parties were contracting for a fountain to be used in furnishing cold carbonated drinks, and as an incident thereto to preserve the flavors, fruits, and condiments used in that connection, and the manufacturer knew of course, the uses to which it was to be put, and the jury was justified in finding that there was an implied warranty.

Objection was made to the instruction of the court on the measure of damages. But the instruction given conforms to the rule in such cases announced by this court in the case of *Stevens* v. *Whalen*, 95 Ark. 488.

The jury allowed appellee the sum of $1,900 as damages, and a verdict was rendered for appellant for the difference between this sum and the balance admitted to be due on the contract, exclusive of interest, and appellee has prosecuted a cross-appeal from the judgment pronounced thereon, it being contended by him that judgment should not have been rendered against him in a sum to exceed $26.06. This argument is based upon certain theories advanced as to the jury's finding in regard to interest. But upon a consideration of this question we find no error in the judgment of the court in this respect. The judgment of the court below is, therefore, affirmed.