HOLCOMB & HOKE MANUFACTURING COMPANY *v.* FISH.

Opinion delivered June 18, 1928.

*A. R. Cooper,* for appellant.

*Patrick Henry,* for appellee.

SMITH, J. Appellant is a corporation engaged in the manufacture and sale of machines used in popping corn and roasting peanuts, and sold appellee two machines, one being a popcorn machine, for the sum of $337.50, the other a combination machine intended to pop corn and roast peanuts, for the price of $895. This suit was brought by appellant to collect the balance alleged to be due on each of the machines.

Appellee did not question the balance due on the popcorn machine, but as to the other machine it was alleged that there had been a breach of the implied warranty under which it was sold that it was adapted to its

intended use. It was also alleged that, in an attempt to repair and adjust and use the machine, a large expense had been incurred and much electricity wasted, as the machine was an electrical one. It was also alleged that the machine was worth $450 less than its purchase price or the sum it would have been worth had it been in good condition.

Notwithstanding the fact that the plaintiff offered testimony to the effect that both machines were tested at the factory before they were shipped and were found to be in perfect condition, the jury was fully warranted, under the testimony in the case, in finding that the combination machine was in a defective condition. The testimony was conflicting as to the extent of these defects, but that on the part of the defendant was to the effect that repeated attempts were made to repair and adjust the machine, but with only partial success, and that expenses amounting to about $75 were incurred in these attempts, including wasted electricity, and that they were never able to make it roast peanuts, although, after two electricians had worked on the machine, it could be used for popping corn, and that the machine was worth $450 less than its purchase price.

The jury returned a verdict for appellant for the balance due upon each of the machines, but found also that the balance due upon the larger machine should be credited with the sum of $450, with interest from April 8, 1925, this being the date of the sale, and judgment was rendered accordingly. From this judgment the plaintiff has appealed and the defendant has cross-appealed.

The only error assigned by appellant (plaintiff below) for the reversal of the judgment is that the court erred in the instructions given on the measure of damages. On this question appellant asked the following instruction:

"6. In arriving at the measure of damages which defendant claims he is entitled to recover by reason of the defects in such machine, the court tells you he would

be entitled to the cost of correcting such defects if the machine could be corrected at reasonable expense, or the difference in value between the value of the defective machine and one which was free from defects, and such as was contracted for.''

The court modified this instruction by adding thereto the following clause:

''and also for the time of his employees, if any, lost in trying to operate and repair the said machine, and the cost of electricity ineffectively used in the operation caused by the defect, if any, and the sums paid out, if any, in an effort to repair same.''

Appellant excepted to this modification, also objected and excepted to the instruction given at the request of the defendant numbered 2, which was to the same effect as the modified 6th instruction set out above.

Under the issues joined in this case we think there was no error in modifying the instruction as indicated. If the machine was defective, and it appeared that these defects might be remedied at a reasonable cost, the purchaser had the right to affirm the sale and make the necessary adjustments, and to recoup the cost thereof when sued for the balance of the purchase money.

In the case of *E. A. Stevens Co.* v. *Whalen,* 95 Ark. 488, 129 S. W. 1081, the purchaser of a pool table, when sued for the balance of the purchase price, sought to rescind the contract for a breach of warranty, after having elected, as the court held, to affirm the sale. It was there said:

''He had no right to keep the property and use it, and at the same time insist on a rescission of the contract. By keeping the property and using it, he elected to pursue the other remedy—that of demanding damages sustained by reason of the defect, which would be the cost of correcting the defect, if it could be corrected at a reasonable expense, or the difference between the value of the defective table and one which was free of defect, such as was contracted for. If the damages found by the jury, by reason of the defective condition of the table,

exceeded the amount of the mortgage notes, then the plaintiff could not recover judgment for possession of the property" (Citing authorities).

At § 1826 of Mechem on Sales, vol. 2, page 1457, it is said:

"Expenses incurred in preparing for what the seller is to do but fails to perform, or in doing that which the seller ought to have done, or in undoing that which he did improperly, fall clearly within the doctrines of the preceding sections, and may be included within the damages to be recovered. For like reasons money expended in a reasonable endeavor to avoid or diminish the injury resulting from the breach of warranty, as, for example, to cure an animal sold as sound, but found to be diseased, may be recovered. Expenses, however, in an unreasonable, hopeless or useless endeavor, or losses caused by continuous use after the defects were patent and evidently incurable, could not be recovered."

The testimony on the part of appellee is to the effect that, while the defects were not entirely remediable, they were partly so, and that, without the work done on the machine, it would neither pop corn nor roast peanuts, but, as a result of this work, the machine could be used to pop corn, although peanuts could not be roasted, and the machine was given a value as the result of the labor expended upon it which it would not otherwise have had.

This right to repair is upon the theory that, by making the repairs, the damages are not only minimized but the cost of the repairs which would place the machine in the condition it was warranted to be would properly measure the damages which the purchaser would be entitled to when sued for the balance of the purchase price. The purchaser would not be required to attempt the repair, and would not be permitted to do so, at the expense of the seller, unless it reasonably appeared, in the exercise of an honest judgment, that the repairs would remedy the defect and at a reasonable cost. If, after such an attempt had been made without success, the machine did not conform to the warranty, the pur-

chaser might, when sued for the balance of the purchase money, recoup, as damages for the breach of the warranty, the difference between the value of the machine as repaired and its sale price.

In the case of *Western Cabinet, etc., Co.* v. *Davis*, 121 Ark. 370, 181 S. W. 273, a purchaser, who was sued for the balance of purchase money due upon a soda fountain, defended on the ground that there was a breach of the warranty of the fitness of the fountain, and in an attempt to repair the fountain certain expenses had been incurred. The trial court gave the following instruction, which was approved by this court:

"1. Plaintiff sues the defendant on a balance on a contract introduced in evidence. The execution of the contract is admitted, and also that there is a balance of $2,311.26 not paid of the amount agreed to be paid under the contract. Defendant, by way of counterclaim, asks damages against plaintiff for alleged defects in the soda fountain (one of the articles sold under the contract), and also damages for expenses in testing the fountain as a suitable article for the purpose for which it was purchased. The burden of proof is on the defendant to sustain his counterclaim by a preponderance of the evidence."

The opinion in the case of *Parrett Tractor Co.* v. *Brownfiel,* 149 Ark. 566, 233 S. W. 706, supports the views here announced. In that case a tractor had been sold for $1,675, and $1,000 of the purchase price paid. In an attempt to repair and adjust the tractor so that it would do the work for which it was intended, the purchaser spent $600, and, when sued for the balance of the purchase price, $675, and the interest thereon, he defended upon the ground that there had been a breach of the warranty, and that he had incurred expense in the repair of the tractor. After announcing the options which a purchaser has where there is a breach of warranty the court said: "The proof showed that the defects in the machine could be corrected by reasonable expenditure, and the correct measure of damages was the expense

of curing defects." (Citing *Western Cabinet Co.* v. *Davis, supra.*

Such is the measure of damages where the defect is remedied; but if, notwithstanding the repair, the defect is not completely remedied so that the article as repaired conforms to the warranty under which it was sold, the purchaser may recoup the difference between the value of the article as repaired and its contract price, together with the cost of the repair. This was what was done in the Parrett case, *supra,* as appears from the statement of facts in that case, as the jury found the amount of damages for the breach of the warranty at an amount equaling the balance of the purchase money, and interest thereon, which amount substantially exceeded the cost of the repairs, and that judgment was affirmed.

The case of *Edwards Mfg. Co.* v. *Stoops,* 54 Ind. App. 361, 102 N. E. 980, announces the principles which are applicable here. It was there decided (to quote a syllabus) that:

"Where metal shingles were warranted fit for use on a certain building, which warranty failed, and effort was made to repair the roof and thus make use of the shingles, but it was found necessary to remove them and supply another roof, the measure of damages was the cost of the metal shingle roof, including the cost of the shingles and the expense of putting them on, less their value after removal from the roof, to which should be added any reasonable expense incurred in attempting to repair and improve the roof so as to make it conform to the warranty, since it was the buyer's duty to minimize the damage as far as possible, and, where things are sold for a particular use, damages for breach of warranty are not confined to the difference of the value of the goods as they were and as they would have been if as warranted, but include all such consequential damages as are the direct, immediate and probable result of the breach."

As to the cross-appeal but little need be said. Appellee (the defendant below) alleged his damages on

account of the defect in the machine to be $450 and his expense to be $75, and there was no reply to his cross-complaint. But he did not move for a judgment for the want of an answer in the court below, and he cannot now be heard to say that no issue was joined in that behalf.

In the case of *Winters* v. *Fain,* 47 Ark. 493, 1 S. W. 711, it was said:

"It is further objected that the decree is wrong because Preddy's answer contained a set-off and counter-claim, which stood practically confessed, as no reply was filed. On the authority of *Gibbs* v. *Dickson,* 33 Ark. 107, we decline to allow Preddy any advantage from this slip in pleading. In that case it is said the correct practice is to move the court for judgment upon the undenied plea; and that if the defendant fails to move, and goes to trial as if the issue was made up, he loses his advantage."

The case of *Young* v. *Gaut,* 69 Ark. 114, 61 S. W. 372, is to the same effect.

Appellee points out that the jury allowed him damages in the sum of $450, with interest from the date of the sale, thus showing that no credit was allowed him for repairs, and that he was allowed only for the difference between the actual value of the machine and its sale price, as the testimony on his behalf was to the effect that this difference amounted to $450. We cannot determine the mental processes by which the jury arrived at its verdict or what sum was allowed on one account or the other. While the testimony supports the verdict returned, it cannot be said that the undisputed evidence would require a larger verdict, and we must therefore affirm the judgment on the cross-appeal, although the testimony would have supported a finding for more damages. *Fulbright* v. *Phipps,* 176 Ark. 356, 3 S. W. (2d.) 49.

As no error appears, the judgment must be affirmed, and it is so ordered.