## LOVELL *v.* SNEED.

### Opinion delivered May 28, 1906.

1. TRIAL—OBJECTION TO EVIDENCE—HOW TAKEN.—Where a question asked of a witness may not elicit incompetent evidence, an objection to the question is improper; but if it does elicit incompetent evidence, a motion should be made to exclude such evidence, or the court should be asked to stop the witness when he commences to give incompetent evidence. (Page 209.)

2. BANKRUPTCY—DISCHARGE—PLEADING.—A discharge in bankruptcy is no defense unless pleaded. (Page 210.)

Appeal from Logan Circuit Court; *Jeptha H. Evans,* Judge; reversed.

STATEMENT BY THE COURT.

In 1901 J. T. Sneed and R. H. Sneed were engaged in a mer-

cantile business in Booneville, Arkansas, under the firm name of Sneed Brothers. In that year R. H. Sneed sold his interest in the firm to his sister, Mrs. Hamilton, but the business was carried on in the name of the old firm. Afterwards in February, 1902, Mrs. Hamilton sold her interest in the business to J. T. Lovell, and after that the business was carried on in the name of Lovell & Company, the firm being composed of J. T. Lovell and J. T. Sneed. At the time that R. H. Sneed sold his interest in the business to Mrs. Hamilton the firm of Sneed Brothers had a contract with the Parlin & Orendorff Company, a corporation of Illinois, for the sale, on commission, of wagons manufactured by that company. This contract was not assignable without the consent of the company, and R. H. Sneed remained bound in this contract until Lovell bought an interest in the firm. At that time a settlement was made between the agent of the company and R. H. and J. T. Sneed, comprising the old firm of Sneed Brothers. It was ascertained that the firm owed the Parlin & Orendorff Company $675.58.

The old firm was unable to pay this amount in cash; and as the old firm had dissolved and gone out of business, the company was unwilling to take the note of the old firm in settlement thereof unless the new firm of Lovell & Company would sign the note as sureties. Lovell & Company agreed to do this, provided that J. T. Sneed and R. H. Sneed would execute notes to Lovell & Company each for one-half the amount of the note, in order to indemnify Lovell & Company against any loss by reason of signing the note of Sneed Brothers to the Parlin & Orendorff Company. Thereupon Sneed Brothers executed their note to Parlin & Orendorff Company for $675.58, payable 1st of November, 1902, and this note was then signed by Lovell & Company. J. T. Sneed then executed his individual note to Lovell & Company for $337.79, due 1st of December, 1902, and R. H. Sneed executed his note to Lovell & Company for the like amount, due also on the 1st of December, 1902. As R. H. Sneed had retired from that business, Lovell & Company required that he give security on his indemity note, and J. F. Basinger signed it as such surety.

When the note of Sneed Brothers to the Parlin & Orendorff Company fell due, it was paid by Lovell & Company, who, as before stated, were sureties on the note. Lovell & Company

afterwards brought this action on the indemnity note executed by R. H. Sneed with J. F. Basinger as surety. The defendants filed an answer, the substance of which was, first, that the debt for which this note was executed was in fact a debt due from the plaintiffs to the Parlin & Orendorff Company, and, second, that at the time this note was executed notes and accounts belonging to the old firm of Sneed Brothers, of the face value of about $900, were placed in the hands of J. T. Sneed, one of the plaintiffs, and that he was to collect these notes and accounts, and pay the note to the Parlin & Orendorff Company. The defendants alleged that Sneed did collect these notes and accounts, and that, if he did not pay the note of Parlin & Orendorff Company out of the money collected, the firm of Lovell & Company received the money collected, and that the plaintiffs for that reason had no right of action.

On a trial before a jury there was a finding and judgment for defendants, and plaintiffs appealed.

*Anthony Hall,* for appellees; *A. T. Barlow,* of counsel.

The burden was on appellees to show payment. There is absolutely no evidence to sustain the verdict, and it is contrary to the law. The verdict should have been set aside.

*James Cochran,* for appellees; *D. B. Castleberry,* of counsel.

There was evidence to sustain the finding of the jury. This court will not reverse unless there is a total absence of evidence to sustain the verdict. 46 Ark. 142; 56 *Id.* 314; 47 *Id.* 196.

RIDDICK, J., (after stating the facts.) This is an appeal by plaintiffs from a judgment rendered in favor of defendants in an action on a promissory note. The facts are set out above. Briefly stated, they are as follows: J. T. Sneed and R. H. Sneed, who had done business as partners under the firm name of Sneed Brothers, became indebted to the Parlin & Orendorff Company in the sum of $675. Afterwards the firm of Sneed Brothers dissolved. R. H. Sneed sold his interest in the firm to his sister, and she in turn sold her interest to J. T. Lovell. Lovell and J. T. Sneed then carried on the business as Lovell & Company. The old firm of Sneed Brothers was indebted to Parlin & Orendorff Company, an Illinois corporation, in the sum of $675.

When the firm of Lovell & Company was formed, Parlin & Orendorff Company insisted that, as the old firm of Sneed Brothers had dissolved, their debt to the company should be paid or secured in some way. As Sneed Brothers did not have the money to pay this debt, they induced Lovell & Company to become surety on the note of Sneed Brothers to Parlin & Orendorff Company for the sum of $675, and, to indemnify Lovell & Company for so doing, J. T. Sneed and R. H. Sneed each executed his individual note to Lovell & Company for half of that amount. The defendant Basinger became surety on this note of R. H. Sneed to Lovell & Company, and this is the note on which he and R. H. Sneed are sued in this action. The defendants admitted the execution of the note, and assumed the burden of proving that it had been paid, or that they were not liable on it.

R. H. Sneed, in his own behalf, testified that Lovell & Company agreed to pay Parlin & Orendorff Company the $675, and that this amount was due to that corporation from Lovell & Company, and was not his debt. He testified that he signed the note because Parlin & Orendorff Company would not accept the note of Lovell & Company. But this statement is inconsistent with other undisputed facts to which this defendant also testified. He admits that he gave the note sued on to Lovell & Company to indemnify them for signing the note to Parlin & Orendorff Company for the $675. But, if Lovell & Company owed this debt to Parlin & Orendorff Company, why was it necessary for defendant to execute his note to them with Basinger as surety in order to protect Lovell & Company from paying their own note? It is not usual for a debtor to insist that others shall indemnify him against having to pay his own debt, and if one did it is not likely that he would obtain the indemnity. As before stated, we think the testimony clearly shows that the note sued on was executed by defendant R. H. Sneed to Lovell & Company to indemnify them against having to pay a note which Sneed Brothers owed.

The note then was executed for a valuable consideration; and, as the testimony showed that Lovell & Company afterwards paid the note on which they became surety, they have the right to recover on this indemnity note, unless it has been paid. Now, the defendant R. H. Sneed admitted on the witness stand that he had neither paid this note nor the note on which Lovell & Com-

pany became surety, unless these notes were paid by Lovell & Company out of money collected on notes and accounts of Sneed Brothers. His whole contention that he paid this note is based on the fact that J. T. Sneed at the time this note was executed had in his possession certain notes and accounts belonging to the old firm of Sneed Brothers which it was understood that J. T. Sneed was to endeavor to collect, and, if collected, to pay on the debt due from Sneed Brothers to Parlin & Orendorff Company. But the defect in defendant's proof is that he does not know how much was collected by his brother on these debts. His testimony on this point is as follows: "I do not know what amount J. T. Sneed collected on the old notes and accounts turned over to him. He told me at one time they had collected about all of them. There was between $800 and $900 of these notes and accounts of Sneed Brothers. That was in October, 1901." Now, defendant, as will be noticed, does not state what the value of the old notes and accounts belonging to Sneed Brothers were in March, 1902, when they were specially turned over to his brother J. T. Sneed to collect and apply proceeds to the payment of the note of Sneed Brothers to Parlin & Orendorff Company, on which Lovell & Company were sureties. He testifies that their face value in October, 1901, was between $800 and $900. But that was the date of the sale by him of his interest in the firm to his sister. These $800 or $900 of notes and accounts were then held by his brother for collection; and, so far as the evidence shows, they may have been nearly all collected and paid out on other debts before the note to Lovell & Company sued on here was executed in March, 1902. The statement of his brother that he had collected about all of them, to which defendant testifies, may have been made before March, 1902; and, if so, would show that there were very few notes and accounts of the old firm of Sneed Brothers left uncollected in March, 1902, at the time the note sued on was executed. The defendant makes no complaint that his brother had not properly disposed of the proceeds of notes and accounts collected by him previous to March, 1902. He impliedly admits that there was no money on hand at that time belonging to Sneed Brothers with which to pay the debt of Parlin & Orendorff Company. He expressly admits that he has paid nothing on that debt, unless his brother collected

money on the notes and accounts of Sneed Brothers after the settlement in March, 1902, and yet he does not state what the amount of those notes and accounts was at that time, nor whether anything was collected on them or not. It thus appears that the testimony of this defendant does not show that this note, or any part of it, has been paid.

On the other hand, the testimony for the plaintiffs is direct and positive that the note sued on has not been paid. J. T. Lovell testified that J. T. Sneed had some old notes of Sneed Brothers for collection, but that he did not collect exceeding $35 on them. J. T. Sneed was not present at the trial, but it was admitted that he would testify as stated in the motion for continuance, and this was "that all the notes and accounts of Sneed Brothers in his hands in October, 1901, were applied on their indebtedness, and that no part thereof was ever received by Lovell & Company on the notes to them," and that the note sued on was not paid. This testimony is corroborated by the conduct of defendant R. H. Sneed in endeavoring to borrow money to pay his note when it came due, and in asking for an extension of time in which to pay it. Giving him the benefit of the $35 which Lovell testified was collected by J. T. Sneed, yet it is still evident that the testimony does not show that the note sued on has been paid in full. We are therefore of the opinion that the defendants do not show that this note has been paid in full, or that nothing is due on it.

As the judgment must be reversed, we will call attention to the fact that a large part of the testimony of the witness Pennington, introduced by defendant, related to the declarations of the defendant R. H. Sneed and his sister, Mrs. Hamilton. These declarations were hearsay, and not competent evidence against the plaintiffs, but it does not seem that any proper objection was made to this testimony. The plaintiff objected to the first question put to this witness, which was whether he knew anything "about the terms of the sale from R. H. Sneed to Mrs. Fulton of his interest in the business of Sneed Brothers." Now, that sale had very little to do with this suit; but, as the sale led up to the settlement in which the note sued on was executed, it was, we think, not improper to show that this sale was made, and the terms thereof, as explanatory of what followed. But it was not competent to allow the witness to detail at length conversations

79—14

between himself, the defendant, and his sister as evidence against the plaintiffs. The defendant or his sister might have testified as to the terms of the sale, but the evidence of this witness was mostly hearsay and incompetent, and should have been excluded, had a proper objection been made. The objection to the first question, though, was not sufficient, for it could not be told from that question that the answer would be improper. The plaintiffs should have moved to exclude the answer, or asked the court to stop the witness when he commenced to detail these conversations.

We think, also, that the court should have sustained the objection made by plaintiff to the testimony of defendant Sneed that he had been declared a bankrupt, and had filed the note sued on as one of his liabilities, for no plea of discharge in bankruptcy was filed by him. But, while the defendant had no right to introduce such testimony, we think that it helped to make out the plaintiffs' case, for it showed that the defendant recognized this note as a valid claim against himself, and for that reason we do not see that this testimony was prejudicial.

For the reasons stated the judgment is reversed, and cause remanded for a new trial.