FORRESTER *v.* LOCKE.

## Opinion delivered June 13, 1921.

1. SALES — BREACH OF WARRANTY.—Where cotton sold with warranty of quality was shipped to the buyer with bill of lading attached to the draft for the purchase price, and the buyer had no opportunity of inspection until after payment of the draft and freight, acceptance of part of the cotton as complying with the contract did not constitute an acceptance of the entire shipment nor bar an action for breach of warranty as to the rest of the cotton.

2. TRIAL—QUESTION FOR JURY. — Whether plaintiffs constituted a partnership or a corporation, *held* under the evidence to be a question for the jury.

3. COMMERCE—PURCHASE OF COTTON FOR DELIVERY IN STATE.—The purchase of cotton in the State for delivery within the State, the drafts for the purchase price being paid by local banks, did not constitute interstate commerce, though the final payment of the purchase price was made in another State.

4. APPEAL AND ERROR—ISSUES IN LOWER COURT.—Where plaintiffs suing as partners alleged that they were doing business in this State, and no issue was made in the trial court as to the particular transaction being an interstate one, and there is no evidence in the record changing the nature of such allegations in the complaint, plaintiffs were bound by the allegations of the complaint and the evidence in their support.

5. CORPORATIONS — PARTIES.—Individuals composing a partnership are not authorized to bring a suit on a contract entered into by a corporation not made a party to the action.

6. EVIDENCE—HEARSAY.—Testimony of the manager of a company's branch office that an officer of the company told him that the company was a partnership and not a corporation was hearsay and inadmissible.

7. EVIDENCE—TESTIMONY BASED ON BOOK ENTRIES.—In an action by a buyer of cotton for breach of warranty of quality, testimony as to the sale by the buyer of the defective cotton and the expenses incurred in such sale, deduced from the buyer's books not kept by the witness and relating to an account between the buyer and third persons to whom the cotton was sold, and not to transactions between the parties, was inadmissible.

8. EVIDENCE—CUSTOM.—Testimony as to the seller's custom in selling cotton was inadmissible where there was a contract between

the parties respecting the sale of the cotton, as the contract, and not the custom, must control.

9.   SALES—BREACH OF WARRANTY—MEASURE OF DAMAGES.—The measure of damages for breach of a seller's warranty of the quality of cotton was the difference between the market value of the defective cotton at the time its condition was discovered and the contract price.

Appeal from Sebastian Circuit Court, Fort Smith District; *John Brizzolara,* Judge; reversed.

*James B. McDonough,* for appellants.

1.   The general rule is that the vendee of personal property is entitled to recover from the vendor the difference between the fair market value of the goods and the contract price, provided the article is not as good as the quality represented in the contract.   121 Ark. 150. Here was but one sale.   The contract was an entirety. If plaintiff had any remedy at all, he was entitled to recover only the difference between the fair market value of the entire lot of cotton and the contract price, provided the cotton was not merchantable.   121 Ark. 150. Plaintiffs can not recover, because they kept the whole lot after discovering forty-four "bollies" therein.   They had the right to accept or decline; they accepted, and, hence, no recovery.

2.   The court erred in directing a verdict for plaintiffs on the issue of whether or not S. B. Locke & Company was a foreign corporation.

3.   The court erred in its instructions given for plaintiff and in refusing those asked by defendants.   It was error also to take the issue from the jury and direct a verdict.   136 Ark. 135; 113 *Id.* 190; 82 *Id.* 86.

4.   Where an unimpeached witness testifies directly and positively to a fact and is not contradicted, and there is no circumstance from which an inference against the fact testified to by the witness can be drawn, the fact may be taken as established and a verdict directed on such evidence, but the rule is subject to many exceptions, and where the witness is interested in the result of the suit, or facts shown that might bias his testimony, the

case should go to a jury. 113 Ark. 190; 82 *Id.* 86; citing 58 Hun (N. Y.) 121; 92 *Id.* 491; 42 Ala. 431; 64 Conn. 55; 101 Ind. 503; 6 Enc. Pl. & Pr. 696; 100 N. W. 256; 102 N. Y. 93; 118 Ark. 128; 124 *Id.* 490. See, also, 129 Ark. 369; 139 *Id.* 236.

5. If the business transacted by S. B. Locke & Company, a corporation of the State of Oklahoma, either directly or indirectly, the paintiff could not recover. 136 Ark. 52; 141 *Id.* 38; 233 U. S. 16; 246 *Id.* 500.

6. It was error to permit W. R. Locke to give hearsay testimony as to the existence of a partnership. Hearsay testimony is not admissible. 10 Ark. 638; 16 *Id.* 628; 22 *Id.* 477; 103 *Id.* 522; 79 *Id.* 204; 186 S. W. 302.

7. It was clearly erroneous for the witness, J. M. Locke, to testify as to the contents and recitals and other matters in the books of S. B. Locke & Company, which were in Muskogee, there being no showing that the books could not be produced. 121 Ark. 150; 2 *Id.* 397; 57 *Id.* 257; 117 *Id.* 442; 79 *Id.* 338; 72 *Id.* 275; 134 Ark. 284. Even if the books had been in the courtroom, it would be necessary to prove that they were properly kept, and that the entries were made at the time of the transactions. 65 Ark. 316; 57 *Id.* 402. The complaint was not sworn to. The answer denied the indebtedness. 113 Ark. 417. It was error to admit this hearsay testimony. 152 Pac. 468. Even a record is not admissible unless the original is shown to be lost. 11 S. W. 410. The loss of a contract must be proved before oral evidence may be admitted. 116 Ark. 268.

The abstract of an assignment of a patent is inadmissible. 208 Fed. 145. Freight bills are secondary evidence and inadmissible. 166 Pac. 96. Secondary evidence of the contents of a writing is not admissible unless it is shown that the original can not be produced. 160 N. W. 15; 190 S. W. 959; 140 N. W. 1006; 71 Atl. Rep. 263. See, also, 229 Ill. 272; 120 Fed. 925; 55 S. C. 214; 77 Ark. 244. The original must be shown to be lost before copy can be introduced. 122 Cal. 358; 55 Pac. 132;

45 S. E. 443; 98 Ill. App. 352; 55 Ind. 194; 135 Mo. 608; 60 Pac. 270, 207; 148 Ala. 659; 41 So. 411. Copies may be excluded where it is not shown that the originals could not be obtained. 72 Ark. 47; 109 Iowa 25; 67 Kan. 787; 40 S. W. 743; 94 *Id.* 173.

Parol evidence of a written instrument is inadmissible where the instrument itself can be produced. 174 Ky. 665; 192 S. W. 853; 99 Atl. 619. Entries in books are not admissible until it is shown that the books are correctly kept and contemporaneous with the facts recorded. 65 Ark. 316; 57 *Id.* 402. The exhibits were not verified, and the complaint contains no verified account, and the evidence does not fall within the rule. 51 Ark. 368; 103 *Id.* 522; 12 Ark. 775. It was error to permit J. M. Locke to testify as to the contents of these books. 111 Ark. 593; 94 *Id.* 183.

8. It was error to admit evidence as to interest on the eight bales of cotton and as to the storage and handling charges on them and also the thirty-six bales.

9. It was error to refuse the peremptory instruction and in refusing instructions 2 and 3, asked by defendants.

*Hill & Fitzhugh,* for appellees.

1. The evidence shows that bollies were not merchantable cotton, and without an express warranty this action could be maintained. 113 Ark. 169; 78 *Id.* 327. The law of this case is well settled. The shipment was an interstate one. 87 Ark. 562; 113 *Id.* 118; 187 U. S. 617. Transactions of interstate commerce are not within the statute prohibiting a foreign corporation doing business in the State. 85 Ark. 278; 113 *Id.* 505; 136 Ark. 52; 141 *Id.* 38.

2. There was no error in admitting testimony nor in the instructions given and refused.

HUMPHREYS, J. This is a suit by appellees against appellants, in the circuit court of Sebastian County, Fort Smith District, for damages on an alleged implied warranty as to the quality of forty-four bales of cotton, in-

cluded in a purchase and sale of 188 bales of cotton. It was alleged, in substance, that appellees, an Oklahoma partnership, maintained an office in Fort Smith, Arkansas, for the transaction of a general cotton business in Arkansas, and, during the cotton season of 1919, purchased 188 bales of merchantable cotton, according to custom, for delivery at Fort Smith, at an agreed price of 36 cents per pound; that there were 44 bales of unmerchantable or "bollie" cotton included in the shipments, which occasioned a total loss of $4,383.91 to appellees.

Appellants interposed two defenses—the first being that appellees were not a partnership, but a foreign corporation engaged in the business of buying and selling cotton in the State of Arkansas, in violation of act No. 313 of the Acts of 1907 of said State; and the second being that the cotton was sold and purchased without regard to grade, at an average price of 36 cents for the entire lot, including the "bollie" cotton.

The cause was submitted upon the pleadings, exhibits thereto, the evidence and instructions of the court, which resulted in a verdict and judgment against appellants in the sum of $3,846.53, from which an appeal has been duly prosecuted to this court.

The facts reveale by the record, in so far as necessary to determine the vital questions on this appeal, are, in substance, as follows: S. B. Locke & Company, an Oklahoma corporation composed of S. B. Locke, J. M. Locke and J. C. Fahnestock, was organized on May 29, 1913, for the purpose of conducting a general cotton business, with its main office at Muskogee, Oklahoma, and a branch office at Fort Smith. W. R. Locke, an uncle of J. M. Locke, was manager of the organization, and H. B. Hunt, bookkeeper of the branch office at Fort Smith, after 1917, and they had been retained in those positions and paid for their services from the Muskogee office with checks of S. B. Locke & Company. Neither W. R. Locke nor H. B. Hunt filed the articles of incorporation in the office of the Secretary of this State, as required by law

before commencing business, or during the time the corporation continued business in Arkansas. J. M. Locke, the vice-president and secretary of the corporation, also testified that he did not file the articles of said incorporation in this State. W. R. Locke testified that S. B. Locke was president, J. M. Locke, vice-president and treasurer, and W. P. Cowen, secretary of the corporation. When first asked whether S. B. Locke & Company was a corporation or partnership, he stated that it was a partnership for about two years before he bought the cotton in question from appellants. He was then shown the articles of incorporation, and stated that it was a corporation in Oklahoma, but a partnership in Arkansas. Being interrogated further upon this point, he made the following answers:

Q.  Then you do not know whether you were dealing as a corporation or a partnership?

A.  I know what I have done.

Q.  That is all you know about it?

A.  That is all.

Q.  Then you did not know of your own knowledge whether you were dealing as a partnership or as a corporation?

A.  No, sir; I did not know. I just knew I was buying cotton.

Later, and on cross-examination, over the objection and exception of appellants, W. R. Locke stated that J. M. Locke told him S. B. Locke & Company became a partnership about two years before the cotton in question was bought.

J. M. Locke testified that, on October 10, 1918, the corporation became dormant, and the business was conducted by S. B. Locke & Company as a partnership, being composed of S. B. Locke, J. M. Locke and W. P. Cowen. He produced an authenticated certificate of the partnership, appearing on the register of the district clerk in Muskogee, which is as follows:

"This is to certify that the partnership of S. B. Locke & Company doing business in the city of Muskogee, Muskogee County, Oklahoma, is composed of S. B. Locke, J. M. Locke, and W. P. Cowen, and that each of said partners' postoffice and residence is Muskogee, Muskogee County, Oklahoma.

"Dated this 10th day of September, 1919.

"S. B. Locke & Company,
"By S. B. Locke,
J. M. Locke,
W. P. Cowen."

The certificate was filed with the register October 16, 1919. He further testified that the cotton business in the branch office at Fort Smith was conducted by the partnership of S. B. Locke & Company, and that the money invested was the money of said partnership, and that the drafts drawn for the cotton in question were paid by the partnership, and denied that any of the business conducted since the 10th day of October, 1918, in Arkansas, was conducted by the corporation of S. B. Locke & Company. Letter heads and other exhibits introduced each carried the name of S. B. Locke & Company, and also the individual names of S. B. Locke, J. M. Locke and W. P. Cowen.

The contract for the sale and purchase of the cotton in question was made on December 13, 1919, between W. R. Locke, representing S. B. Locke & Company, and Charles E. Forrester, representing himself and the other appellants. The contract was oral.

W. R. Locke testified that, as the representative of S. B. Locke & Company, he purchased from Charles E. Forrester, representing himself and others, 188 bales of merchantable cotton, situated at Waldron, Arkansas, to be shipped and delivered to his company at Fort Smith, Arkansas; that it was agreed the cotton should contain no "bollies" or "dogs;"—"bollies" being descriptive of cotton taken by machinery from the bolls before they opened, and "dogs' descriptive of cotton which had fallen on the ground and been damaged in the field.

Charles E. Forrester testified that, representing himself and others, he sold to W. R. Locke, as the representative of S. B. Locke & Company, the entire lot of 188 bales of cotton, "hog round," delivery f. o. b. Waldron after it had been inspected by................................................ Heard, the representative of S. B. Locke & Company.

The cotton was billed out in several shipments, and the bills of lading, bearing the word "hog," were attached to drafts and mailed to S. B. Locke & Company at Fort Smith, Arkansas. The drafts were approved in the Fort Smith office and paid through the Fort Smith banks, and then sent through the Muskogee banks to S. B. Locke & Company at Muskogee, who made final payment. The entire 188 bales arrived in Fort Smith at the same time, early in January, 1920. The freight was paid, and, according to the evidence of appellees, upon examination it was discovered that there were forty four bales of "bollies" contained in the shipments. Appellees disposed of 144 bales of the shipment, and, in the latter part of January, offered to return the forty-four bales of "bollies" to Charles E. Forrester, upon repayment of the purchase price of 36 cents per pound. Forrester refused to accept the "bollies" and return the purchase price. Appellees disposed of the "bollies" in June at 16 cents a pound, deducted all expenses for handling same from the amount and instituted this suit against appellants for the difference between the net amount received for the "bollies" and the contract price of 36 cents per pound paid for it.

In the course of trial, appellants offered to prove that, during the cotton season of 1919, Charles E. Forrester's custom was to sell his cotton in lots, "hog round" and the court, over the objection of appellants, refused to admit evidence of that character.

J. M. Locke was permitted to testify in relation to the damages, over the objection and exception of appellants, to the sale of the "bollies" by his office in his absence, and to the items of expense attached to the handling of same, from a statement made by him from the

books of S. B. Locke & Company, in the Muskogee office, without showing that the books were properly kept or that the books were kept by him.

Appellants' first contention is that appellees can not recover because the undisputed evidence shows that, after the cotton was examined in Fort Smith and the discovery made that the shipments contained forty-four bales of "bollies," it accepted 144 bales of the cotton, which, on account of the indivisibility of the contract, constituted an acceptance of the entire lot of cotton. We can not agree with learned counsel for appellants in this contention, because, under appellees' version of the contract, payment of freight and the contract price of the cotton was to be made before an opportunity was given to inspect it. After paying the freight and the purchase price of the cotton and receiving same, the only remedy available to appellees was to sue for damage on account of the inferiority of any or all the cotton upon the implied warranty that it all should be merchantable, and, under appellees' version of the contract, no opportunity was given them to inspect and elect before receiving same.

Appellants' next contention is that the court erred in refusing to submit the question of whether S. B. Locke & Company was a foreign corporation at the time the contract was entered into for the purchase of the cotton with appellants, without first having filed its articles of incorporation in the office of the Secretary of State, in the manner required by act No. 313 of the Acts of 1907, of the General Assembly of the State of Arkansas. Appellants requested the court in two instructions, numbers 2 and 3, to submit this question to the jury. Appellees specifically objected to the instructions on the ground that the undisputed testimony showed that appellees were not a corporation, but were a partnership at the time they entered into the contract in question. The court refused to give either of these instructions, and, in effect, by so refusing, took that issue of fact from the jury. The evidence of appellants tended to show that, after the organization of the corporation in Oklahoma,

it opened an office in Fort Smith and transacted a general cotton business for a number of years in violation of the Arkansas laws; that, up to and including the time the contract in question was made, there had been no change in the management of the business; that the manager and bookkeeper were paid in the same manner for their services during the entire time with checks issued in the Oklahoma office by S. B. Locke & Company. The manager, W. R. Locke, first testified that S. B. Locke & Company were a partnership, and, afterward, that it was a corporation in Oklahoma and a partnership in Arkansas. Later, he testified that he did not know whether it was doing business in Arkansas as a corporation or as a partnership. No change was made after the organization of the corporation in Oklahoma in the letter heads. They did not indicate whether S. B. Locke & Company was a corporation or a partnership. The offices were maintained throughout in the same place. J. M. Locke testified that the corporation became dormant and was supplanted by a partnership on the 10th day of October, 1918. The certificate evidencing the partnership was dated September 10, 1919, sworn to September 16, 1919, and filed in the office of the district clerk on October 16, 1919. The certificate on its face showed that S. B. Locke & Company were doing business as a partnership in the city of Muskogee. There is nothing in the face of it to indicate that the partnership assumed control of the corporation's business outside of that city. In fact, the only evidence in the record to the effect that S. B. Locke & Company at Fort Smith was conducting its business as a partnership was that of J. M. Locke, who is an appellee and a plaintiff in this action, and he did not make any explanation why the corporation became dormant, and, without dissolution, permitted its activities to be prosecuted by a partnership composed of practically the same parties composing the corporation. In addition, it appeared that the Lockes who composed the corporation were related. W. R. Locke was an uncle of J. M. Locke, and S. B. Locke, the latter's son.

It is true that J. M. Locke swore positively that the business at Fort Smith was a partnership business at the time the contract was made; but, not only was he an interested party, but his evidence is in effect disputed by that of W. R. Locke, as well as by other facts and circumstances heretofore referred to. In this state of the record, it can not be said that the undisputed evidence showed that S. B. Locke & Company was a partnership at the time it purchased the cotton in question. *Skillern* v. *Baker,* 82 Ark. 86; *Briggs* v. *Collins,* 113 Ark. 190; *Poinsett Lbr. & Mfg. Co.* v. *Traxler,* 118 Ark. 128; *Yazoo & Miss. V. Rd. Co.* v. *Altman,* 124 Ark. 490; *Furst & Thomas* v. *Dewberry,* 136 Ark. 135. Appellees insist, however, that, even though appellee was a foreign corporation when it entered into the contract in question, it pertained to an interstate transaction. If this contention be correct, then any foreign corporation may open an office in this State, purchase its goods out of the State for shipment into the State and sell its commodities for shipments to points out of the State, and in that way evade the statutes of the State, requiring foreign corporations doing business in this State to file their articles of incorporation with the Secretary of State. We can not subscribe to that doctrine. Again, it is alleged in the complaint in this case that S. B. Locke & Company was doing business in this State. No issue was made in the trial court that this particular business was an interstate transaction. There is no evidence in the record changing the nature of that allegation in the complaint. We think appellees are bound by the allegations of the complaint and the evidence adduced in support thereof. Moreover, a complete answer to appellees' position is that this suit was brought by them as individuals composing a partnership, and the corporation was not made a party by them.

Appellants also insist that the court erred in permitting W. R. Locke to give hearsay testimony to the effect that S. B. Locke & Company was a partnership at the time the contract in question was entered into. He

was permitted to say that J. M. Locke had so informed him. We think the evidence clearly hearsay and inadmissible.

Appellants also insist that the court erred in permitting J. M. Locke to testify to the sale of the "bollies," when not present, from the records made on the books in the Muskogee office, and to testify what expenses were incurred in the sale thereof, from a statement he made up by reference to the books. The record does not show that the books were kept by J. M. Locke or that the book account related to transactions between J. M. Locke and appellants. The book entries from which the statement was made related to an account between S. B. Locke & Company and third parties to whom the "bollies" were sold. We think this evidence inadmissible.

Appellants also contend that the court erred in excluding evidence to the effect that Charles E. Forrester's custom was to sell his cotton in lots "hog round." It is admitted by both appellants and appellees that there was a contract with reference to the sale and purchase of this cotton. The contract, and not the custom, must control. The court did not err in excluding that character of evidence.

Appellants' last insistence is that the measure of damages laid down by the court was incorrect. The measure of damages adopted by the court permitted the jury to deduct the net amount received by appellees for the forty-four bales of "bollies" from the contract price of 36 cents per pound. The evidence shows the "bollies" were received in the early part of January and not sold by appellees until the month of June following. The correct measure of damages was the difference between the market value of the "bollies" at the time it was discovered that the shipment contained this inferior cotton and the contract price. No evidence was introduced to meet this rule.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.