CROW v. FONES BROTHERS HARDWARE COMPANY.

Opinion delivered April 9, 1928.

1. SALES—IMPLIED WARRANTY.—In a sale of manufactured goods, where there is no opportunity for inspection by the purchaser, there is an implied warranty that the articles are merchantable and reasonably fit for the purpose for which they are intended.

2. SALES—IMPLIED WARRANTY.—The rule as to the implied warranty of merchantability and fitness for purpose intended does not apply where the purchaser demands a specified article and it is shipped by the seller direct from the manufacturer to the purchaser.

3. SALES — IMPLIED WARRANTY.—Where a known, described, and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still, if the known, described, and defined thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris*, Judge; affirmed.

*D. T. Cotton* and *Watkins & Pate*, for appellant.

*Owens & Ehrman* and *Pryor, Miles & Pryor*, for appellee.

MEHAFFY, J. Plaintiff, a resident of Van Buren County, Arkansas, 38 years of age, brought suit in the Pulaski Circuit Court against Fones Brothers Hardware Company, a corporation organized and doing business under the laws of the State of Arkansas, and engaged in the business of selling hardware and other commodities in the city of Little Rock. Among other things it sells fuse, which is used in lighting and exploding dynamite and powder.

The plaintiff, on the 3d day of August, 1926, was in the employ of the Highway Department of Arkansas, and his principal duty was to use dynamite in clearing highways of obstructions. He was, on the date mentioned, at work on road number 65, in Van Buren County, Arkansas, blowing stumps and rocks from the right-of-way. He cut a piece of fuse eighteen or twenty inches in length, to which he attached a cap, and to which was also attached

dynamite, and this was placed where the obstruction was necessary to be. removed. He was using Clover Leaf Brand of fuse, which was manufactured by the Ensign-Bickford Company of Simsbury, Connecticut, and had been using the same brand of fuse for quite a while, and it had a burning speed of one foot to each minute after it was lighted. At the time mentioned in plaintiff's complaint he cut the fuse eighteen or twenty inches in length, attached the cap and dynamite in the usual manner, using care, prudence and caution, lighted the fuse, expecting that it would require a minute and a half before the explosion, and this would have given him time to walk to a place of safety. But, when he lighted the fuse, it exploded instantly, causing him to lose the sight of one of his eyes and impair the sight of the other so that he is practically blind, and he suffered other injuries on the head, face and body.

The fuse he was using was furnished to him by the State Highway Department, and he alleged that the Highway Department had purchased it from Fones Brothers Hardware Company. It is alleged that Fones Brothers Hardware Company knew the fuse was to be used in blowing stumps and obstructions from highways and that a slow-burning fuse was necessary; that, in selling the same to the Highway Department, the seller impliedly warranted that the fuse was a slow-burning fuse and fit and suitable for the purposes for which it was purchased and to be used, and, by reason of its failure to furnish this character of fuse, it is liable to plaintiff for the injury which occurred, resulting in his damages.

The defendant answered, denying the material allegations in the complaint.

After hearing the evidence, the court below directed a verdict for the defendant. Plaintiff filed a motion for a new trial, which was overruled, and exceptions saved, and the plaintiff duly prosecuted his appeal to this court.

The evidence on the part of the plaintiff tends to show that he was working for the Highway Department,

and was using explosives, and had attached to the dynamite a fuse about eighteen or twenty inches in length. He put the dynamite, fuse and cap in the hole in the usual way, and stuck a match to the end of the fuse, and it exploded immediately, within a couple of seconds, injuring his eyes, destroying one of them, and almost destroying the other. He was also injured about the neck, and his flesh was burned. He had been at work for the Highway Department about ten or twelve months; had been handling powder on county roads for about eighteen years. At the time of the accident he was using Clover Leaf Brand of fuse, and had not used any other brand of fuse during his employment with the Highway Department. He had tested this brand of fuse, and found that it ranged from 45 to 60 seconds to the foot. That is, it would take from 45 to 60 seconds for a foot of said fuse to burn after being lighted. If this fuse had burned in the usual way he could have been in a place of safety before the explosion. He put in numerous shots, and this is the only accident he ever had. The explosion was instantaneous when he lighted the fuse. Before this accident his health was good. He had used Hercules and Dupont powder. The dynamite that he used at the time of the accident did not seem to explode quite as quickly as the Hercules or Dupont. The Highway Department furnished the dynamite and the fuse. Plaintiff had made tests as to the burning speed of fuse several times before the accident, and it ranged from 45 to 60 seconds to burn a foot. He got the fuse from the Highway Department, but does not know where the Highway Department got it. He was using the same kind of dynamite that he had been using during his employment with the Highway Department, and he prepared his shot according to the instructions that accompanied the dynamite box and fuse, and fixed it just like he had been preparing his other shots.

Other witnesses testified to seeing the accident, and to the effect that the explosion occurred immediately after the fuse was lighted. And they testified to sub-

stantially the same facts with reference to the accident as was testified to by the plaintiff.

Testimony also showed that the method of ordering material of this kind was that the foreman or man working a section made requisitions on the Little Rock office for materials, and the purchasing department would either ship the material or authorize him to purchase it locally. The shipments of dynamite and fuse were largely from Little Rock, from the State warehouse. The fuse used at the time of the accident was bought from Fones Brothers Hardware Company. They began to use the fuse from Fones Brothers Hardware Company about the first of September, 1925, and had bought fuse from no other jobber since that time. They had always bought the Clover Leaf Brand. When they ordered from Fones Brothers Company they expected them to send them the Clover Leaf Brand.

A witness identified the bill of lading, and testified that on April 12, 1926, the Hercules Powder Company delivered about 30,000 feet of Clover Leaf fuse, and witness signed for it on that date. The shipment was delivered on account of Fones Brothers Hardware Company. He receipted for it in the warehouse of the Highway Department. When the requisition was received from Van Buren County, the Highway Department sent the Clover Leaf Brand. This fuse had been placed in the warehouse April 5 by the Hercules Powder Company, for the account of Fones Brothers Hardware Company. There was no other fuse in the warehouse except the Clover Leaf Brand. A slip or billing on the package showed that the package was shipped through the Fones Brothers Hardware Company of Little Rock.

The appellant insists on a reversal of the judgment, contending that there was an implied warranty by Fones Brothers Hardware Company that the fuse that it sold to the State Highway Department, and which caused the injury complained of, was suitable for the purposes for which it was ordered.

The first case to which appellant calls attention is the case of *Neel* v. *West-Winfree Tobacco Company*, 142 Ark. 505, 219 S. W. 326, and quotes from the syllabus as follows:

"In a sale of manufactured goods, where there is no opportunity for inspection by the purchaser, there is an implied warranty that the articles are merchantable and reasonably fit for the purpose for which they are intended."

We think the above statement of the law is correct, especially where the manufacturer of goods makes a sale to a person who has no opportunity to inspect, or where a dealer has the goods in his possession with the opportunity to inspect and the buyer has no opportunity to inspect same, and purchases relying on the seller's judgment or information and the fact that the seller had the opportunity to know about the quality of the goods. But the above statement is not the rule where the purchaser demands a specified article and it is shipped direct from the manufacturer to the purchaser. In the instant case the Highway Department specified the article it wanted; it purchased the Clover Leaf Brand of fuse. This was a brand that the Highway Department had been using for quite a while, and this particular brand was bought through Fones Brothers Hardware Company. It was not manufactured by appellee, and the particular fuse about which complaint is made was never in the possession of the appellee, but it was delivered direct to the purchaser, the Highway Department, by the Hercules Powder Company. The purchaser would doubtless have refused to accept any other brand. It knew as much about the quality of the goods as the appellee knew. In the particular instance neither had any opportunity to inspect.

"Where a known, described and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, described and defined thing be actually sup-

plied, there is no warranty that it shall answer the particular purpose intended by the buyer." Williston on Sales, second edition, 229.

There would be no reason for the seller to be bound by an implied warranty when the buyer described particularly the kind of article it wanted to purchase and the manufacturer sent that particular article. It might not be suitable for the use intended by the purchaser, but the seller would certainly have a right to assume that, when the purchaser described the article, called for a particular kind, that was the kind desired. The purchaser had been using this kind of fuse, knew as much about it as the appellee knew, it was never in the possession of the appellee, it had no opportunity to examine it, and could not have known any more about it than the appellant, and there was therefore no reason for an implied warranty.

Appellant next calls attention to *Main* v. *Dearing,* 73 Ark. 470, 84 S. W. 640. In that case the court stated:

"Ordinarily the law implies no warranty of quality, leaving that a matter of contract between parties, but there is an exception to this rule as thoroughly recognized as the rule itself. When a manufacturer offers his goods for sale, where the opportunity of inspection is not present before the purchase, the vendee necessarily relies on his knowledge of his own manufacture. In such cases the law implies a warranty that the article shall be merchantable and reasonably fit for the purpose for which it was intended."

It will be noticed that the court said, in the last case, that the purchaser had no opportunity to inspect, and that he necessarily relied on the knowledge of the manufacturer as to his own goods. The manufacturer, of course, would know, would have an opportunity to inspect and ascertain whether the goods were suitable, but we have no such case here; Fones Brothers Company never had an opportunity to see or inspect the goods complained about at any time. The goods were never in

its possession, and the vendee could not have relied on the knowledge of Fones Brothers Hardware Company. It could not do that, because Fones Brothers Company never had the goods in its possession. One of the reasons why a dealer is held on an implied warranty is that the purchaser has no opportunity of inspection, and he is therefore entitled to rely and will naturally be presumed to have relied on the seller's skill and judgment. But, as to the particular goods sold in this case, the purchaser could not have relied on any implied warranty, because he bought the goods by description, called for a particular brand which the Fones Brothers Hardware Company did not have in stock, and did not see or inspect, and hence could not have known anything about the character of the goods, certainly could not have known any more than the purchaser. It would be unreasonable to say that the Fones Brothers Hardware Company, who had no opportunity to see the goods, had any superior skill or knowledge, and of course the purchaser did not rely and would not have been justified in relying on any implied warranty of Fones Brothers, under the circumstances in this case.

"Even though inspection would not reveal the defect in the goods, it is possible for the buyer to select them, relying upon his own judgment, and, if he does this, the seller, at least in the absence of guilty knowledge, will not be liable on an implied warranty." Williston on Sales, 2 edition, § 235.

"The rule excluding implication of warranties in sales of known, described and definite articles, is simply an application of the general principle stated in both statutes, that reliance on the seller's skill and judgment is a prerequisite to the imposition of an obligation upon him." Williston on Sales, 2 edition, § 236A.

Appellant next calls attention to the case of *Hercules Powder Company* v. *Rich* (C. C. A.), 3 F. (2d.), 12, and quotes from that opinion. In that opinion it is stated that the plaintiff, testifying to his conversation with

Bailey, said: "I asked the kind of fuse that I would get. He said he would give me safety fuse. I told him that I couldn't use anything except slow-burning safety fuse with a minute per foot. He says, 'That is what I will ship.' * * * So he sold me 500 caps, blasting caps, 500 electric globe caps that is to be used with a powder with which we connect the wire, regular 'B' caps; that is, the blasting caps supposed to be used by fuse of various kinds and touching off by fire. I told Mr. Bailey that I couldn't use anything except the slow-burning fuse of a burning speed of a minute per foot. He says 'That is what you will get.'"

There is no such evidence in the case at bar.

J. D. McGlathery testified in substance as follows: That the fuse that appellant, Crow, was using at the time of the accident came from the State Highway Department, shipped through Fones Brothers Hardware Company of Little Rock, Arkansas, and was consigned to L. B. McGlathery, at Shirley, Arkansas. When the shipment of fuse arrived at Shirley the witness carried it out to road No. 65 and placed it in the shop building for use. This shipment of fuse was delivered at Shirley, Arkansas, on the 26th day of May, 1926.

Vanderberg testified that when McGlathery, county superintendent, made the requisitions on him for fuse, he sent him Clover Leaf Brand. That the fuse he sent McGlathery was placed in the warehouse on April 12 by the Hercules Powder Company for the account of Fones Brothers Hardware Company. He did not have any other fuse in the warehouse but the Clover Leaf Brand, and from the time he became connected with the Highway Department he had no other brand of fuse except the Clover Leaf Brand. Vanderberg was the storekeeper for the Highway Department, and he shows that this fuse was delivered by the Hercules Powder Company, that it was the Clover Leaf Brand, and that, while it was delivered for the account of the Fones Brothers Hardware Company, it was delivered by the

Hercules Powder Company direct to the warehouse of the Highway Department.

The court said in the Hercules Powder Company case, above referred to:

"If the jury believed the testimony of plaintiff, they were warranted in finding that the party selling the fuse —one Bailey—was fully cognizant of the purpose for which it was intended; that plaintiff told him he could not use anything except a fuse of a burning speed of a minute per foot, and that Bailey assured him that was what would be shipped; that such statement was not one merely of an opinion, but was a distinct affirmation of a fact and intended to influence the sale, and that plaintiff relied on such affirmation in making the purchase. Hence that the words, if used, constituted a warranty."

We have no such testimony in this case. Fones Brothers made no promise at all, and, as a matter of fact, knew less about what was wanted than the purchaser. Fones Brothers Hardware Company was not the seller in the sense that they had the goods in store and made a sale direct, but the order was given, sent to the Hercules Powder Company for a particular brand of fuse, and that brand was delivered by the powder company to the purchaser direct.

In the Hercules Powder Company case referred to, the fuses complained of were sent to the branch office at Little Rock for the purpose of sale. Bailey was the agent in charge of the branch office, and engaged in selling the goods of the defendant, that is, the Hercules Powder Company. The fuses in question in the Hercules Powder Company case were sent to the agency in Arkansas for the purpose of being sold in the business of the agency. The goods in the instant case were not sent to Fones Brothers Hardware Company to be sold. Bailey was the agent of the Hercules Powder Company, and the court held that he had authority to make warranties. In view of his handling fuses of different burning periods, it was said that nothing could be more natural, less out

of the ordinary, than to have the authority as such general sales agent to make warranties of a reasonable period for the fuses to burn. He could not otherwise have made the sales.

It was also said in the Hercules Powder Company case, quoting from Benjamin on Sales:

"But where a chattel is to be made or supplied to the order of the purchaser, there is an implied warranty that it is reasonably fit for the purpose for which it is ordinarily used, or that it is fit for the special purpose intended by the buyer, if that purpose be communicated to the vendor when the order is given. * * · * When one contracts to supply an article in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the vendor, there is an implied warranty that it shall be reasonably fit for the purpose to which it is to be applied; and the better doctrine is that this rule applies to dealers as well as to manufacturers, and not to manufacturers alone, as the plaintiff in error contends."

But, as we have already said, there was nothing done at any time, so far as this record shows, by the Fones Brothers Hardware Company that would justify the buyer in believing that Fones Brothers Hardware Company knew anything about the goods or that would justify the buyer in relying on the superior judgment and skill of the Fones Brothers Hardware Company. If a manufacturer or dealer sells an article of this character, and knows the use for which it is intended, the weight of authority is that there is an implied warranty that the goods are suitable for such use, and also that the dealer as well as the manufacturer may be bound by an implied warranty. However, we know of no case where a shipment was made direct from the factory, and buyer described the goods that he wanted, that another would be held liable on an implied warranty simply because the goods were shipped through it.

Appellee discusses the question of whether there could be any liability in this case because the sale was

not made to the injured party, and that the dealer is not liable to any persons other than the persons to whom the sales are made. But it is unnecessary to decide that question in this case, because we hold that, under the circumstances and evidence in this case, the Fones Brothers Hardware Company could not be liable in any event, even to the buyer himself.

The judgment of the circuit court is correct, and is therefore affirmed.