STATEMENT BY THE COURT.
Appellant, the assignee of the contract, brought suit upon a conditional sales contract executed by appellee to the Electric Refrigerating Company of El Dorado, for the purchase of one model 758 Delco light plant, and one model 202 pump, which the company had sold him on the installment plan.
The contract was executed November 3, 1927, at which time the plant was installed and accepted, and the sales contract for a cash consideration was duly assigned to appellant before any of the installments thereunder became due. The first installment was due November 3, 1928, in the sum of $238, and the second payment was due November 3, 1929, in the same amount, with an acceleration clause making both payments due upon failure in payment of either. Upon default in the first annual payment, suit was brought December 21, 1928, for the unpaid balance and the Delco lighting equipment was taken into custody by the sheriff in compliance with the statute, 8730, C. M. Digest.
Appellee admitted the contract of purchase, alleged that it was made up on the representation that the equipment would generate sufficient electricity, as would light his house and run such fans as he might desire to use, and would meet his requirements reasonably for a *Page 772 
number of years. The plant did not give satisfaction after its installation. He also had the Electric Refrigerating Company, which sold the equipment to him, made a cross-defendant, and prayed judgment against it in the amount of any judgment that should be rendered for appellant, and also that he have judgment for the $164 cash payment made.
The Electric Refrigerating Company was not served with a summons before the trial herein.
The testimony shows that appellant corporation is engaged in financing time sales of General Motors products through conditional sales contracts; that it purchased the sales contract note executed by appellee to the Electric Refrigerating Company for the balance of the purchase price on one Delco light plant, model 758, serial 295830, and one pump, model 202, serial 58941-32c-DC, for a valuable consideration in the usual course of business of the General Motors Acceptance Corporation, and before any of the payments under the contract had matured, the balance due thereunder being $476, with interest after maturity, etc. The contract was dated December 10, 1927, showing a consideration of $316 paid to W. P. Galloway Company of Little Rock. It was executed by appellee to the Electric Refrigerating Company, as seller, and assigned to the General Motors Acceptance Corporation through the Galloway Company of Little Rock. Some of the transactions had been going on for approximately three years. Appellant company had no working agreement with the Electric Refrigerating Company, but was authorized by it to make checks covering proceeds of such contract payable to the W. P. Galloway Company of Little Rock. There was no contract between the appellant company and the Electric Refrigerating Company, which did not work for appellant.
Chester Crow testified that he was doing business as the Electric Refrigerating Company in November, 1927, and sold appellee the Delco light plant and pump of the model and number and already described; that the *Page 773 
plant was new, and shipped to appellee from the W. P. Galloway Company of Little Rock over the Rock Island under bill of lading dated October 31, 1927. Jerry was notified, and the service man took the plant out of the depot to his house and installed it. Model 758 was a generally known, well-defined article of commerce, known by the serial number, and he had sold other plants like it before, 15 or 18, which did not vary in any particular from the plant which Jerry received. It was a new plant. Jerry's complaints were answered and a service man was sent each time one was called for. He quit business in 1928. Installation order shows 750-watt plant, 16-plate glass batteries. It was standard equipment for that size plant, and for all farm houses, unless they wanted to use more motor power. There are 10 or 12 of the particular type of plant in Union County, and no trouble developed in the plants where they were kept in gasoline and oil. They had not found a defect in any of the plants sold, and this kind had been on the market long enough to have a well known and established reputation. Absolutely it was not a used outfit. The only part of the plant that was Westinghouse was the amp-meter that shows the charge of the plant.
Other witnesses testified that the amp-meter was manufactured by the Westinghouse people for the Delco light plants, and that the name thereon showed that such was the case.
Holland, a service man for Delco light plants, stated he had installed the plant properly, and had had several service calls from the home of Mr. Jerry, to which he responded, and when he arrived he found the batteries completely discharged, no gasoline in the tank, nor oil in the machinery, neither was there any gasoline on the place, and he had to take it out of his car to start the machinery. He found this condition existing upon each response to service calls, and he answered all of them, the last one being about seven or eight months after the plant was installed. He had been repairing Delco light *Page 774 
plants for about 11 years, in this particular service for about five years. Said this plant was the regular standard 750-watt plant with 16 plate glass batteries. Several witnesses testified to like effect, and all that the plant was new and of the kind and specifications required by the contract.
Appellee admitted the execution of the contract and the acceptance of the plant as installed; that it ran well after it was serviced for a time, and he did not deny that it was out of gasoline with the batteries run down at each time a call for service was put in, but did say that he kept gasoline on the place for the operation of the plant.
One Bennett testified that he was a sales agent for the Westinghouse Manufacturing Company, engaged in selling and installing and servicing farm lighting systems. That he had inspected this light plant bought by the appellee, and that it was too small for the job. Too large a motor for such a small light system. "The plant did not have enough capacity to take care of the load they had on it." Said it was "a reassembled lighting system * * * wouldn't say whether the engine was new or old. It was a converted engine." He admitted, however, that the equipment and plant were intended, for the purposes for which they were tried to be used, making light and pumping water. He said he was selling a competing line, and that he had observed other Delco lighting systems like the one in controversy, "and they were all bad." "That he took all the bad plants he could get trades on and sold them Westinghouse." The batteries in appellee's machine were run down, and the plant was not in operation, but waiting for a service man when he first saw it. "Didn't think that Jerry would have gotten satisfactory service from the engine generally as it was equipped; it wasn't any good, needed a Westinghouse. There was nothing wrong with the installation as far as the job of erecting it, that the plumbing was a poor job, it wasn't polished up as smooth as it should have been." *Page 775 
Will Grace, another witness, was allowed to testify that he lived near Jerry, and that they had tried to sell him a Delco light plant. That he had had a conversation with an agent of the Electric Refrigerating Company about the plant they sold Jerry. Didn't know what man it was, but they had a plant in the car which they tried to sell him. "I told him I didn't want one, and he says, `I guess the reason you don't want a plant is because Mr. Jerry has a bum outfit,' and I says, `No, I just don't want one,' and he says, `We let Mr. Jerry have a second-hand outfit for the price we let him have it at'."
The court instructed the jury, refusing to give a peremptory instruction for appellant, and modified his requested instructions 1-A and Nos. 2 and 3, over its objection and exceptions, and refused to give its requested instruction No. 4. The jury returned a verdict for appellee, and from the judgment thereon appellant prosecuted this appeal.
(after stating the facts). It is first insisted for reversal that the court erred in allowing testimony introduced tending to show that the plant installed was not fit for the service for which it was purchased, and intended to be used, and especially in permitting the hearsay testimony of the witness that an agent of the seller, long after the plant was sold appellee and installed and the contract assigned to appellant, told him in trying to sell him a like plant, "I guess the reason you don't want a plant is because Mr. Jerry has a bum outfit. * * * We let Mr. Jerry have a second-hand outfit for the price we let him have it at." The witness relating this conversation did not know the man with whom he talked, nor that he was an agent of the company which sold the light plant to appellee. Said he would not recognize him if he saw him again, and, certainly, he was not in the performance of any duty so far as the transaction *Page 776 
in controversy is concerned at the time of this statement. He did say that the man was riding in a car belonging to the Electric Refrigerating Company, and was taking to him as a prospect for a sale of a light plant machine, which he had in the car at the time. He certainly had no authority to make an admission, as against the interest of said company about a sale, a transaction long since completed, out of the presence of his principal, and the testimony was nothing but hearsay at best, was inadmissible and highly prejudicial. The court erred in not excluding it. Lovell v. Sneed, 79 Ark. 204,95 S.W. 157; Forrester v. Lockett, 149 Ark. 225,231 S.W. 897; Galloway v. Russ, 175 Ark. 665, 300 S.W. 390.
It is undisputed that the Delco light plant was purchased under the written contract, which contained no warranty; that the machinery for its construction and operation is a well known and definite article of commerce in general use for the construction of such plants, and there was therefore no warranty as to the fitness of it for the purpose for which it was purchased implied, and the court erred in modifying the said instructions, and in failing to give the one asked, telling the jury, under the terms of the contract, there was no warranty except against defects in the machine, etc. Western Cabinet Fix. Mfg. Co. v. Davis, 121 Ark. 370, 181 S.W. 273; Kull v. Noble, 178 Ark. 496, 10 S.W.2d 902; Crow v. Fones Bros. Hardware Co., 176 Ark. 993, 4 S.W.2d 904.
For the errors designated, the judgment must be reversed, and the cause remanded for a new trial. It is so ordered. *Page 777